[No. 19833. Department Two. February 1, 1927.]

JAMES W. HALL, *Appellant, v.* LEWIS A. DARE, *Respondent.*[1]

[1] FIXTURES (6)—BETWEEN MORTGAGOR AND MORTGAGEE—ORNA-MENTAL FIXTURES. A flag pole, sixty feet long, nine inches in diameter at the base, is a fixture, as between mortgagor and mortgagee, and part of the soil, where it was held in position on the lawn of residence property by a solid concrete base, imbedded in the ground to the depth of two feet, and by anchor blocks, especially constructed for holding it in a permanent and lasting manner, notwithstanding it could be removed without breaking any fastening.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered September 14, 1925, upon findings in favor of the defendant, in an action of replevin, tried to the court. Affirmed.

*Hartge & Cadwallader,* for appellant.

*H. E. Gorman,* for respondent.

PARKER, J.—The plaintiff, Hall, commenced this action in the superior court of Kitsap county seeking recovery of a large flag pole from the defendant, Dare. The plaintiff, by the usual replevin proceedings, caused the pole to be seized by the sheriff, and no re-delivery bond being furnished by the defendant, the pole was accordingly given by the sheriff into the possession of

[1]Reported in 252 Pac. 926.

the plaintiff, who has retained it pending this action. A
trial upon the merits in the superior court, sitting with-
out a jury, resulted in findings and judgment awarding
the pole to the defendant.and directing delivery of it
to him, from which disposition of the case the plaintiff
has appealed to this court. The right of the contro-
versy depends upon whether or not the pole belongs to
the defendant by virtue of its being real property as
part of the premises belonging to him at the time it was
originally removed therefrom by the plaintiff; it being
peaceably recovered by the defendant after such re-
moval.

The controlling facts, as we view this controversy,
are not in dispute, and may be summarized as follows:
In the year 1903, the pole was owned by H. K. Hall and
had been erected upon premises owned by him. In the
summer of that year, he caused the pole to be moved to,
and erected upon, his newly acquired residence prem-
ises, where it remained until after the defendant be-
came the owner of that real property. In February,
1904, H. K. Hall conveyed the premises to Elizabeth
Hall, his wife. In October, 1910, Elizabeth Hall con-
veyed the premises to their son, the plaintiff, James W.
Hall. In December, 1921, the plaintiff mortgaged the
property to Mrs. Huber. This mortgage was duly fore-
closed in pursuance of which the property was by the
sheriff of Kitsap county sold to Mrs. Huber and in due
time, on June 18, 1924, was conveyed to her by a duly
executed sheriff's deed. On August 16, 1924, Mrs.
Huber conveyed the premises to the defendant. The
plaintiff lived upon the premises from the time of be-
coming the owner thereof until September 16, 1924, that
is, one month after the defendant became the owner
thereof by conveyance from Mrs. Huber. During that
month the plaintiff occupied the premises as a tenant

of the defendant, prior to which time, after the foreclosure, he occupied the premises as a tenant of Mrs. Huber.

A few days prior to leaving the premises, and manifestly in contemplation thereof, the plaintiff removed the pole therefrom without the consent of the defendant. A short time thereafter, the defendant peaceably regained possession of the pole. A short time thereafter, the plaintiff commenced this action seeking recovery of the pole. Thereafter the case came to trial, resulting in the judgment awarding the pole to the defendant, as above noticed. The plaintiff claims the pole as personal property by virtue of his succeeding to all of the interest in the personal property of his father and mother. The defendant claims the pole as being a part of the premises, that is, as being part of the realty and passing to him by the mortgage foreclosure and sheriff's deed to Mrs. Huber and by the deed from Mrs. Huber. No claim is made here that the mortgage executed by the plaintiff, under the foreclosure of which Mrs. Huber acquired her title to the premises, contained any provision excepting the pole from the burden of that mortgage lien.

The pole is sixty feet long, nine inches in diameter at the base and weighs approximately seven hundred pounds. Plainly, it was specially made and is in no sense a stock product capable of being purchased in the market as such. For the erection of the pole, there was prepared in the front lawn of the premises an octagon foundation of solid concrete, twelve inches in diameter, extending twenty-four inches below, and fourteen inches above, the surface of the ground. An iron pipe, three inches in diameter, was inserted in the center of the top of the foundation extending above the top of the foundation to fit into a hole of the same size

in the base end of the pole. To hold the pole erect, an iron band, consisting of four segments held with bolts where their ends came near together so as to tighten the band around the pole, was placed about five feet above the concrete foundation from which four iron stay rods, with threaded turnbuckles in each of them, ran angling from the pole down into four heavy concrete anchor blocks imbedded in the ground about an equal distance apart, around the pole and some five feet distant from the base foundation. The pole was not held or fastened to the ground in any other manner. The pole could be removed without breaking any fastening; that is, by unscrewing the bolts holding segments of the band and the upper ends of the stay rods, removing the rods and lifting the pole from the foundation above the pipe inserted in the top of the foundation. While the pole was not originally made for this particular foundation, plainly this particular foundation, the imbedded anchor blocks and the iron appliances used in connection therewith, were all constructed as a unit expressly for the erection and holding of this pole in place in a permanent and lasting manner; all of which construction was caused to be made by the then owner of this residence premises. The pole so erected had stood constantly in place during all these intervening years, except that it had been taken and kept down a few times during very short periods, each time for the purpose of painting it.

[1] In an effort to state some general principles determinative of when articles attached to, or used in connection with the use of, realty become fixtures and a part of the realty, this court, in *Filley v. Christopher*, 39 Wash. 22, 80 Pac. 834, made this general observation:

"The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold."

Entertaining this general view of the law, it was there held that chairs in a theatre auditorium, placed there and attached to the floor with screws, by the owner of the ground and building for use of the building as a theatre, thereby became fixtures and a part of the realty, and the title thereto passed with the execution and foreclosure of a mortgage on the realty, the mortgage being executed by the owner while the chairs were so in the building. This holding seems to us to be controlling in our present inquiry.

It is argued, however, that this flag pole was not physically attached to the realty. True, it was not attached in such a manner as to require the actual breaking of any material in order to remove it. The same can be said of the theatre seats above noticed. All that was necessary to remove them was to unscrew the screws which held them to the floor. To remove this flag pole, it was necessary to unscrew the nuts and bolts which held the stay rods to the iron band around the pole and which held the band firmly around the pole; or, to entirely unscrew the turnbuckles in all of the stay rods so as to separate the upper parts of them from the parts imbedded in the concrete anchor blocks and thus remove the upper parts of the stay rods with the pole. One or the other of these methods of unfastening the pole from the realty was necessary to its removal. However, we think it not necessary that there should be such an absolute physical attachment or holding of the pole to the realty to make it a part

thereof, in view of its size, its general character, the permanent nature of the foundation and anchor blocks specially constructed for the holding of it, and such construction and erection of the pole having been done by the owner of both the realty and the pole at the time of such construction and erection. It seems to us that if the holding of the pole in place was by gravity alone, so that it could have been removed by merely lifting it out of its position without the loosening of any of its holdings, it should still be regarded as attached to the realty. Gravity is the only force that holds practically every wooden building to its foundation. Manifestly, that is a sufficient physical attachment to the realty to make such building a part thereof when so placed by the owner of both the land and the building. In *Snedker v. Waring,* 12 N. Y. 170, the principal question was as to whether or not a statue placed in a courtyard of a residence by the owner of both the land and the statue became a fixture and part of the realty, though held in place by gravity alone. Holding it to be a fixture and part of the realty, Justice Parker, speaking for the court, said:

". . . the doubt in this case arises from the peculiar position and character of this statue, it being placed in a court yard before the house, on a base erected on an artificial mound raised for the purpose of supporting it. The statue was not fastened to the base by either clamps or cement, but it rested as firmly on it by its own weight, which was three or four tons, as if otherwise affixed to it. The base was of masonry, the seams being pointed with cement, though the stones were not laid in either cement or mortar; and the mound was an artificial and permanent erection, raised some two or three feet above the surrounding land, with a substantial stone foundation.

"If the statue had been actually affixed to the base by cement or clamps or in any other manner, it would

be conceded to be a fixture and to belong to the realty. But as it was, it could have been removed without fracture to the base on which it rested. But is that circumstance controlling? A building of wood, weighing even less than this statue, but resting on a substantial foundation of masonry, would have belonged to the realty. A thing may be as firmly affixed to the land by gravitation as by clamps or cement. Its character may depend much upon the object of its erection. Its destination, the intention of the person making the erection, often exercise a controlling influence, and its connection with the land is looked at principally for the purpose of ascertaining whether that intent was that the thing in question should retain its original chattel character, or whether it was designed to make it a permanent accession to the lands.''

Of course, in the sale of real property, whether by deed absolute or by mortgage and its foreclosure, there may be specific provisions in such deed or mortgage as to entitle the one executing it to retain some article as personal property which would be, in the absence of special agreement, a fixture. But that is not this case. It is not claimed that the mortgage, the foreclosure of which passed title to Mrs. Huber and ultimately to the defendant, contained any stipulation aiding the plaintiff in his claim of the pole being personal property rather than a fixture. Nor is this a case of something placed upon the land after the execution of the mortgage. Nor is this a case of a tenant placing something upon the leased premises of such nature that, in the absence of any controlling agreement in the tenancy contract, the presumption would be against it becoming a fixture and a part of the realty; but it is a controversy in substance between a vendor and vendee, though the passing of title was accomplished by the foreclosure of a mortgage, as in *Filley v. Christopher, supra,* making the presumption the other way, that is,

making the presumption that the pole was placed upon the premises by the owner of both the land and the pole as a fixture and to become a part of the realty. In *Reeder v. Hudson Consol. Mines Co.,* 118 Wash. 505, 203 Pac. 951, quoting from our previous decision in *Ballard v. Alaska Theatre Co.,* 93 Wash. 655, 161 Pac. 478, Judge Mitchell, speaking for the court, said:

"A different rule obtains for determining the intent when the question arises between landlord and tenant, or licensor and licensee, than obtains when it arises between grantor and grantee, mortgagor and mortgagee, or heir and executor. When the annexation is made by a tenant or licensor the presumption is that he did not intend to enrich the freehold, but intended to reserve title to the chattel annexed in himself, while from an annexation by the owner of the property, the presumption is the other way. *Chase v. Tacoma Box Co.,* 11 Wash. 377, 39 Pac. 639; *Dunsmuir v. Port Angeles Gas, W., El. L. & P. Co.,* 30 Wash. 586, 71 Pac. 9; *Lynn v. Waldron,* 38 Wash. 82, 80 Pac. 292; *Welsh v. McDonald,* 64 Wash. 108, 116 Pac. 589; *Cutler v. Keller,* 88 Wash. 334, 153 Pac. 15."

Some of the early decisions of this court, when superficially read, may seem not wholly in harmony with our conclusions here reached, but we know of no expression of views by this court made since rendering our decision in *Filley v. Christopher, supra,* to be other than consistent with the conclusion we here reach, which is that the pole became, by the manner and circumstances of its erection by the owner, a fixture and part of the realty, and hence passed to the defendant by the mortgage foreclosure and the deed from Mrs. Huber.

The judgment is affirmed.

MACKINTOSH, C. J., BRIDGES, TOLMAN, and ASKREN, JJ., concur.