[No. 49238–7.   En Banc.   July 28, 1983.]

*In the Matter of* ROBERT L. SCHUH, *Respondent,*
v. THE DEPARTMENT OF ECOLOGY, *Petitioner.*

*Kenneth O. Eikenberry, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Wick Dufford, Assistant,* for petitioner.

*Ries & Kenison,* by *Lawrence L. Tracy,* for respondent.

ROSELLINI, J.—Respondent, Robert L. Schuh, sought permission to transfer a groundwater right to a new location. The Pollution Control Hearings Board (PCHB) denied permission, the Superior Court reversed and the Court of Appeals affirmed. We hold that the trial court erred in vacating the decision of the PCHB and reverse.

This dispute arose from the following facts. Respondent, like many farmers in Eastern Washington, would like to irrigate his 160–acre farm by tapping into existing groundwater supplies. His farm lies south of I–90 between George and Moses Lake. Rather than applying for a permit of his own (behind 213 other applicants), respondent purchased the rights to an existing permit from a James Redwine. That permit was appurtenant to Mr. Redwine's farm which lay 5 miles northeast of that owned by respondent.

The permit purchased by respondent was originally owned by the previous owner of Redwine's farm, a gentleman by the name of Albin O. Pederson. Mr. Pederson applied for the permit on December 17, 1949. In response to the application, the State Department of Conservation and Development, Division of Hydraulics, predecessor to the Department of Ecology (DOE), issued groundwater permit 1221 on June 12, 1950. Certificate of Ground Water Right 888A was issued on November 30, 1951.

At the time the certificate was issued, the United States Bureau of Reclamation was completing the facilities necessary to deliver water pursuant to the Columbia Basin Project. The project started delivering irrigation water to

the lands in this area in 1957 and continues this service through today.

Mr. Pederson's farm is located within the Columbia Basin and is thus eligible for service by the federal project. He was informed of this fact when he applied for the permit.

Mr. Pederson's permit of record contains the following limitation:

Quantity of water appropriated shall be limited to the amount which can be beneficially applied less amount of water available from rights of Columbia Basin Project and not to exceed 1600 gallons per minute; 640 acre–feet per year, to be used for [irrigation].

Exhibit A3.

Since 1957, Mr. Pederson's farm has been irrigated with water purchased through the Columbia Basin Project.

The present controversy arises from the assignment of Mr. Pederson's permit to respondent. The permit was initially transferred to Mr. Redwine in conjunction with purchase of the Pederson farm in 1967. On February 17, 1976, Mr. Redwine then assigned the permit to respondent, Mr. Schuh. The assignment was conditioned upon respondent obtaining approval from the DOE of his proposal to change the water right contained in this permit. Respondent sought two changes in the permit: a different point of withdrawal and a different place of use.

The matter first came before the DOE, which refused permission for the proposed change in use. The DOE reasoned that "[i]f the certificate is moved to the new location in the NE¼ Sec. 12, T 18 N, R 26 E.W.M., it will become the senior right and in case of regulation, would be the last to be effected. This will be detrimental to and impair the rights presently enjoyed by others in the area." Exhibit R–3. Respondent appealed this recommendation to the PCHB. It affirmed the DOE's recommendation. The PCHB found the amount of water available pursuant to this permit was 47.45 acre–feet and concluded that granting of the proposed amendment would enlarge the rights granted

thereunder. The PCHB also found that if the changes were allowed, the comprehensive regulatory and management scheme adopted by the DOE would be substantially and detrimentally affected contrary to the public welfare.

On appeal to the Superior Court for Grant County, this finding was reversed. The DOE then appealed to the Court of Appeals, Division Three, which affirmed the trial court. We granted review to resolve two issues. First, Did the Court of Appeals err in interpreting the rights granted by this permit? Second, Did the Court of Appeals improperly evaluate the effect granting respondent's request would have on the public welfare?

Petitioner urges initially that the Court of Appeals erred in finding that the transfer of respondent's permit to a new location resulted in no enlargement of the right originally granted by that permit.

To determine whether the water right will be enlarged by this change, we must first determine the scope of that right *prior* to the proposed change. The PCHB determined that the permit granted the right to withdraw 640 acre–feet per year less the amount of water available from the Columbia Basin Project. Since the farm received water from the Columbia Basin Project at the rate of 592.55 acre–feet per year, only 47.45 acre–feet of water remained available under the terms of the permit.

The Court of Appeals viewed this issue as a question of law which it was free to interpret independently of the agency determination. In so concluding, the court committed two errors. First, it incorrectly characterized this issue as a question of law. Second, it applied the improper standard to resolve the issue. The proper standards were recently set out in *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 646 P.2d 113 (1982). In reviewing questions of fact, the appellate court searches the agency record and determines whether the findings are or are not clearly erroneous. *Sellers,* at 324. Questions of law are reviewed under the error of law standard. *Sellers,* at 325. Although the court may substitute its judgment for that of the agency,

the agency's view of the law is accorded substantial weight because of its expertise in administering a special field of law. *Sellers,* at 325.

Mixed questions of law and fact are reviewed de novo but the factual component of such questions will not be reweighed. *Sellers,* at 330.

Here, the issue presents a mixed question of law and fact concerning the interpretation of a permit. The factual issue to be resolved is whether or not the permit originally contained the limitation linking the amount of water Mr. Pederson had a right to obtain from the State to that which he purchased from the federal project. The agency found that Mr. Pederson's permit contained that limitation.

We find substantial evidence supports that finding. For instance, Mr. Pederson was notified at the time he applied for the permit that his farm was within the federal project area; the 1950 permit contains the language of limitation (although the certificate did not); and Mr. Pederson actually irrigated his farm from the federal project and did not use the water authorized by the permit after 1957. Since substantial evidence exists to sustain the agency's findings that the limitation existed, it was error to ignore this finding. *Franklin Cy. Sheriff's Office v. Sellers, supra.*

Turning to the legal question, the issue then becomes, Did the agency correctly evaluate the legal consequences of that limitation? The agency viewed the condition as limiting the amount of water which may be appropriated to that in excess of that available from the federal project. Since Mr. Schuh sought to transfer the permit to a piece of property outside the federal project area, the net effect of such a transfer would be an expansion of the right.

The Court of Appeals, on the other hand, looked to the amount of water specifically allocated under the permit. Because the 640 acre–feet of water allocation had not been returned to the State upon the receipt of federal water, the Court of Appeals believed that the permit granted rights to the full amount of water. It concluded, therefore, that transfer of the right would not result in in its enlargement.

We disagree. First, the terms of the permit unambiguously limit the amount of water allowed to that in excess of the amount available from federal projects. Although the original certificate did not contain the limitation, the permit purchased by respondent certainly did.[1]

Also, the evidence presented before the PCHB demonstrated that the federal government was developing a water system to service this area prior to the time Mr. Pederson applied for this permit. Since all parties were aware of this fact, we find the DOE's interpretation of the permit as being supplemental to the federal right to be the more reasonable position.

In addition, the agency's conclusion coincides with the general common law and statutory rule that the rights to use water are appurtenant to the land. *See* RCW 90.03.380. Respondent's interpretation would divorce the permit for use from the land upon which it was issued. Although such amendment is allowed under the statutes, it will be permitted only if the provisions of RCW 90.44.100, which require that such a change *not* enlarge the right conveyed by the original permit, are met. If permits such as the one here were viewed as being without limitation, this statutory prohibition on enlargement of the right would be meaningless because an unlimited permit could not be enlarged. We find this interpretation of the statute and permit to be unacceptable.

The DOE next challenges the Court of Appeals conclusion that approval of the amendment to this permit would best serve the public interest in efficient and fair management of water resources. The DOE argues that it would be a disservice to that interest to allow respondent, by purchasing an existing permit, to leapfrog his application and priority right beyond some 213 applications presently on

---

[1]Respondent argues, however, that there is no evidence to establish that Mr. Pederson received notice of the limitation. We find this argument irrelevant to the issue here, since the permit was a matter of public record. Furthermore, it is doubtful that respondent has standing to raise a possible lack of notice that occurred several decades ago.

file for this same water.[2]

▮▮ Initially, we note that the DOE decision concerning approval of permits and in this case, approval of amendments to permits, is a discretionary one. *See Peterson v. Department of Ecology,* 92 Wn.2d 306, 314, 596 P.2d 285 (1979). As a discretionary decision, we will not set it aside absent a clear showing of abuse. "A clear abuse of discretion may be shown by demonstrating the discretion was exercised in a manner which was manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *Wilson v. Board of Governors,* 90 Wn.2d 649, 656, 585 P.2d 136 (1978); *see also Skagit Cy. v. Department of Ecology,* 93 Wn.2d 742, 613 P.2d 115 (1980).

The Court of Appeals did not review this issue under an abuse of discretion standard but rather substituted its judgment for that of the DOE. This was error. Applying the abuse of discretion standard, it is clear that the DOE's decision was neither "manifestly unreasonable" nor reached for "untenable reasons". Here, the DOE simply applied the statutory criteria contained in RCW 90.44.100. That section provides that an amendment should be granted

> only on the conditions that: (1) The additional or substitute well or wells shall tap the same body of public ground water as the original well or wells; (2) use of the original well or wells shall be discontinued upon construction of the substitute well or wells; (3) the construction of an additional well or wells shall not enlarge the right conveyed by the original permit or certificate; and (4) other existing rights shall not be impaired.

Here, the DOE ruled that the amendment would (1) enlarge the rights contained in the permit; (2) infringe upon existing rights; and (3) be detrimental to the public welfare.

The Court of Appeals, viewing the effect of the permit as conveying 640 acre–feet of water, saw no enlargement of the

---

[2]The DOE also argued that the interpretation suggested by respondent would result in a windfall to him because he would be entitled to free public water while others were required to purchase it. The profit element of a given transaction is not a proper consideration for evaluating the rights granted under such a permit.

right. As noted above, this was error.

As to the second proposition, the Court of Appeals refused to characterize applications as existing rights. This ruling too was error. Permits are issued in the same order as the applications are received, thus the DOE concluded correctly that an individual's place in line for these permits is an existing right to be considered under this statute.

■ The Court of Appeals also rejected the DOE's evaluation of the effect this change would have on the public welfare. Here, the court gave no weight to the DOE's expertise in the area, but again substituted its judgment for that of the DOE. Again the court erred. As we noted in *English Bay Enters., Ltd. v. Island Cy.,* 89 Wn.2d 16, 21, 568 P.2d 783 (1977), due deference must be given "to the specialized knowledge and expertise of the administrative agency." Here, the DOE is in a far better position to judge what is in the public interest regarding water permits than a court. Its decision should therefore have been sustained.

Since no deference was given the agency's expertise, the decisions of the Court of Appeals and the trial court must be reversed. The record indicates that the DOE carefully considered the conflicting rights of each party, as well as the public interest in this matter. We remand for reinstatement of the PCHB's decision denying respondent's request for amendment.

WILLIAMS, C.J., and STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.

Reconsideration denied January 30, 1984.