[No. 7028-0-III.   Division Three.   March 20, 1986.]

WESTERN AG LAND PARTNERS, ET AL, *Respondents,* v. THE DEPARTMENT OF REVENUE, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *James R. Tuttle, Assistant,* for appellant.

*Darrell E. Ries* and *Ries & Kenison,* for respondents.

McINTURFF, J.—The Department of Revenue appeals a Superior Court decision holding that a sale of certain center pivot irrigation equipment located on farm property is not subject to a retail sales tax because the equipment is a fixture on the realty. The Superior Court decision had reversed an administrative ruling by the Board of Tax Appeals. We affirm.

Western Ag Land Partners (WALP), a limited partnership, was formed in 1973 to acquire, lease and sell various parcels of irrigated farmland in Central Washington. The land was irrigated by center pivot irrigation systems (CPIS), which convey water through a long arm of pipe moving in a circle around a pivot point. The water is pumped from its source and piped to a pivot point, consisting of a 6–cubic–yard concrete slab on which a metal structure is bolted and through which extends a vertical portion of the water supply line, called a riser pipe. Connected to this riser pipe, through an elbow, coupler and rubber gas-

ket, is the main arm of the system which delivers the water to the sprinkler heads. The main arm of the system rests upon several wheeled towers 8 to 10 feet in height. These towers are usually controlled by timed electric motors which assure the pipe sections will be kept in line as the main arm proceeds in a circle around the pivot.

After WALP was formed in 1973, it acquired several parcels of irrigated farm property. First, it obtained "Metro Project" farmland west and south of Moses Lake in Grant County. Metro Project had 26 CPIS and the partnership added 6 more. In 1974, WALP purchased Lind–Coulee Ranch, which had 12 CPIS in operation; WALP replaced 5 of the systems and added 2 additional CPIS. Finally, in 1976 WALP acquired Ice Harbor Farm in Walla Walla County. This farm had in place approximately 41 CPIS, of which WALP replaced 13.

From 1975 through 1981, WALP leased some of these properties, conveying possession of the irrigation system and vesting in the tenant sole responsibility for operating and maintaining the CPIS. In 1977, WALP suffered a $1.8 million loss in the sale of its potato crops and was forced to sell Metro Project, Ice Harbor Farm and the Lind–Coulee Ranch.

With the exception of Grant County, all counties and the Department considered CPIS not as fixtures, but personal property, and, pursuant to former RCW 82.08.030, assessed a retail sales tax on the estimated use value of the systems on lands sold. When the Department assessed taxes on the CPIS located on the above properties, WALP petitioned for and was denied correction of the assessment. WALP appealed to the Board of Tax Appeals, which, following a hearing, sustained the Department. Thereafter, WALP appealed the Board decision to the Grant County Superior Court, which reversed the Board, holding the decision clearly erroneous and finding that the irrigation systems were fixtures as a matter of law. The court ordered a refund of $259,020 plus interest; the State appealed.

The pivotal issue is whether these irrigation systems

are fixtures rather than personal property for purposes of assessing sales taxes. A Board of Tax Appeals determination of whether an item is a fixture constituting real property is a mixed question of law and fact, reviewable under RCW 34.04.130(6)(d).[1] *Department of Rev. v. Boeing Co.*, 85 Wn.2d 663, 666–67, 538 P.2d 505 (1975); *see also* 1 G. Thompson, *Real Property* § 55 (1980 & Supp. 1981). In an appeal involving a mixed question of law and fact, the court does not reweigh the facts, but determines the law independently of the agency decision and applies it to the facts unless clearly erroneous. *Schuh v. Department of Ecology*, 100 Wn.2d 180, 184, 667 P.2d 64 (1983); *Peterson v. Department of Empl. Sec.*, 42 Wn. App. 364, 367, 711 P.2d 1071 (1985); *Hitchcock v. Department of Retirement Sys.*, 39 Wn. App. 67, 71, 692 P.2d 834 (1984).

RCW 82.08.020(1) authorizes the assessment of a sales tax upon each "retail sale" of tangible personal property. *See* RCW 82.04.050. Although neither the statute nor the Department has defined "tangible personal property" for sales tax purposes, the property tax statute provides some insight. Real and personal property may be defined by the common law or by administrative interpretations. RCW 84.04.080, .090; *see also* WAC 458-12-010(3)(c). Department regulations define real property as:

(2) All buildings, structures or permanent improvements built upon or attached to privately–owned land.
(3) Machinery, equipment or fixtures affixed to land

. . .

(a) Such items shall be considered as affixed when . . .
(i) They are securely attached to the real property; or

---

[1]RCW 34.04.130(6) provides:

"The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

". . .

"(d) affected by other error of law; or

"(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

"(f) arbitrary or capricious."

(ii) . . . permanently situated in one location on real property and . . . adapted to use in the place it is located . . .

WAC 458–12–010. Personal property is defined as goods and chattels including, but not limited to, tangible movables such as farm machinery. WAC 458–12–005.

■ When applying these regulations and statutes, the Department and the Board of Tax Appeals have deemed CPIS to be personal property for sales tax purposes. Until recently, however, Grant County considered CPIS a part of the realty. Thus, although administrative interpretation should be given great weight, *Safeco Ins. Cos. v. Meyering,* 102 Wn.2d 385, 391–92, 687 P.2d 195 (1984); *Ward v. WSU,* 39 Wn. App. 630, 633, 695 P.2d 133 (1985), the interpretation here has been inconsistent and is not conclusive.

■ According to the common law, whether an item is a fixture or personal property turns upon the application of three general tests, all of which must be satisfied:

(1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold.

*Boeing,* at 667 (quoting *Lipsett Steel Prods., Inc. v. King Cy.,* 67 Wn.2d 650, 652, 409 P.2d 475 (1965)); *Oden v. Seattle,* 72 Wn.2d 221, 225, 432 P.2d 642 (1967) (quoting *Forman v. Columbia Theater Co.,* 20 Wn.2d 685, 695, 148 P.2d 951 (1944)); *Liberty Lk. Sewer Dist. 1 v. Liberty Lk. Utils. Co.,* 37 Wn. App. 809, 813, 683 P.2d 1117 (1984).[2]

---

[2]White and Summers present two other "objective", although unheralded, tests to determine whether an item is a fixture: the "half–inch formula" and the "screwdriver–crescent–wrench–one–hour" rule. J. White & R. Summers, *Uniform Commercial Code* 1056 n.66 (2d ed. 1980). Under the former, "anything which could be moved more than a half inch by one blow with a hammer weighing not more than five pounds and swung by a man weighing not more than 250 pounds would not be a fixture." Under the latter, anything would be deemed a fixture unless one could loosen the item from the floor or wall with a screwdriver and a crescent wrench within 1 hour. While we do not endorse either test, we question whether the CPIS could be moved more than a half inch by such a hammer blow.

The State concedes the second leg of the test but disputes annexation and intent.

The first prong, annexation, is often considered in light of the actual relationship of the object to the realty— whether the article is "in use as an essential part" of the overall use of the property. *See Courtright Cattle Co. v. Dolsen Co.*, 94 Wn.2d 645, 657, 619 P.2d 344 (1980); 5 R. Powell & P. Rohan, *Real Property* § 660, at 96.4 (1984 & Supp. 1985). Furthermore, a fixture may be constructively annexed to the real property. Even though the article may not be physically affixed to the realty, it may be constructively annexed because it is specially fabricated for installation or because it is a necessary functioning part of or accessory to an object which is a fixture. *Rayl v. Shull Enters., Inc.*, 108 Idaho 524, 700 P.2d 567, 570–71 (1984) (center pivot irrigation system is fixture); *Seatrain Terminals of Cal., Inc. v. Alameda Cy.*, 83 Cal. App. 3d 69, 147 Cal. Rptr. 578, 582 (1978) (750–ton dockside cranes are fixtures); *Nearhoff v. Rucker*, 156 Wash. 621, 625, 287 P.2d 658 (1930) (monorail and trolley part of real estate for tax purposes); R. Brown, *Personal Property* § 16.3 (3d ed. 1975 & Supp. 1985).

The Board of Tax Appeals found in its "analysis and conclusions" that the CPIS were not "actually annexed to the realty." Where the conclusions of law include statements of fact, this court will consider the statements as such even though characterized as a conclusion of law. *Ridgeview Properties v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982); *Andrew v. King Cy.*, 21 Wn. App. 566, 569, 586 P.2d 509 (1978). Although this court must defer to the factual finding of the administrative tribunal, *Schuh*, at 184, we hold the CPIS were constructively, if not actually, annexed to the property. The main arm is an integral part of the irrigation system, which includes the concrete center

---

On the other hand, it may be possible to loosen the main arm from the cement pivot within an hour. Even the "objective" tests fail in providing a clear determination whether an item is a fixture.

pivot and underground waterlines, both being actually annexed to the property. The irrigation system, in turn, is also an indispensable addition since the normal use of the semiarid farmland requires additional watering. Further, the record indicates the CPIS were specifically adapted to the particular farmland, commensurate with the size and topography of the land.

The State relies upon *Boeing,* but we find it distinguishable. There, the court determined that "fixed assembly jigs", used only in the production of the Boeing 747, were personalty because the future use of the building in which the jigs were located was in dispute. Since the permanency of the jigs was totally dependent upon Boeing's continued use of the building to manufacture the Boeing 747, and the building could be used to manufacture other Boeing products, the court concluded the jigs were personalty. Unlike the jigs, however, the CPIS are an indispensable part of the property because without irrigation, farming in this semiarid region would be impossible. The Superior Court properly concluded the irrigation system was annexed to the property.

■ Since the Department stipulated that the CPIS satisfy the second prong of the fixtures test, we address the final prong: intention in installing the irrigation equipment. Intention is the most important of the three factors and is determined

> from the circumstances surrounding the annexation, including the nature of the article affixed, the annexor's situation in relation to the freehold, the manner of annexation, and the purpose for which it was made. The test is objective rather than subjective intent.

(Citations omitted.) *Liberty Lake,* at 813; *Strong v. Sunset Copper Co.,* 9 Wn.2d 214, 230, 114 P.2d 526, 135 A.L.R. 423 (1941). When a property owner attaches the article to the land he is rebuttably presumed to have annexed it with the intention of enriching the freehold. *Nearhoff,* at 628; *Hall v. Dare,* 142 Wash. 222, 227, 252 P. 926, 50 A.L.R. 635 (1927). WALP and its predecessors in interest are pre-

sumed to have attached the CPIS with the intention of enriching the economic potential of the farm property. Absent some evidence rebutting this presumption, we hold the CPIS, under these circumstances, are fixtures under the 3–prong fixture test. As succinctly stated by a majority of the Supreme Court of Idaho, which grappled with the identical issue before us, "[i]rrigation in a semi–arid region . . . is the very life of the land. It is beyond comprehension that the system was installed for any temporary purpose." *Rayl,* at 528 (quoting *Johnson v. Hicks,* 51 Or. App. 667, 626 P.2d 938, 941 (1981), quoting *First State & Sav. Bank v. Oliver,* 101 Or. 42, 198 P. 920 (1921)).[3]

The judgment of the Superior Court is affirmed.

GREEN, C.J., and THOMPSON, J., concur.

---

[3]*See also Parrish v. Southwest Wash. Prod. Credit Ass'n,* 41 Wn.2d 586, 589, 250 P.2d 973 (1952) (lateral pipes, pumps and frames of irrigation equipment are "integrated system installed with the intention of making a permanent improvement to the property").