**In re SAND & SAGE FARM & RANCH, INC., Debtor.**

**In re Randolf R. Ardery and Sandra K. Ardery, Debtors.**

Nos. 00–12209–12, 00–12210–12.

United States Bankruptcy Court, D. Kansas.

Aug. 16, 2001.

Connie DeArmond, Christina L. Medeiros, Office of U.S. Attorney, Wichita, KS, Donald N. Dowie, Jr., U.S. Department of Justice, Washington, DC, Patricia A. Reeder, Woner Glenn Reeder Girard & Riordan, Topeka, KS, David H. Snapp, Dodge City, KS, for creditors.

Dan W. Forker, Jr., Hutchinson, KS, for debtor.

Edward J. Nazar, Chapter 12 Trustee, Wichita, KS.

## MEMORANDUM OPINION

ROBERT E. NUGENT, Bankruptcy Judge.

This matter came before the Court on May 22, 2001 for evidentiary hearing on Debtors' Motion for Authority to Sell

Property Free and Clear of Liens. Debtors, Sand & Sage Farm & Ranch, Inc. ("Sand & Sage"), and Randolf and Sandra Ardery, owners of Sand & Sage, filed Chapter 12 petitions on June 13, 2000.[1] Pursuant to 11 U.S.C. § 363(c)(1) and (f), and Fed. R. Bankr.P. 6004, the Arderys seek to sell real and personal property located in Edwards County, Kansas, to Bohn Enterprises, L.P. ("Bohn") for $100,000.00. Ag Services of America ("Ag Services") objected to the proposed sale asserting a first and prior lien over Offerle National Bank, formerly Farmer's State Bank ("the Bank") in the irrigation system, pumps and grain bins.[2] Ag Services claims a valid and perfected security interest in, inter alia, the Arderys' equipment. The Bank holds a recorded mortgage which encumbers the real estate to be sold, along with any buildings, improvements or fixtures thereon.

At issue is whether the center pivot irrigation system is a "fixture" or simply "equipment" as defined in case law and the Kansas Uniform Commercial Code. If the Court determines that the irrigation system is equipment, then Ag Services' lien prevails because the Bank does not have a lien in the Arderys' equipment. However, if the irrigation system is a fixture, then the Bank's lien on the Arderys' fixtures is superior to Ag Services' security interest.

■ Whether personal property annexed to real estate is a fixture depends on: (1) whether it is actually annexed to the real estate; (2) whether it is adapted to the use of the land; and (3) whether the parties to the transaction intended the personalty to be permanently annexed. *Peoples State Bank v. Clayton*, 2 Kan.App.2d 438, 439, 580 P.2d 1375 (1978). Put another way,

> " . . . goods are 'fixtures' when affixing them to real estate so associates them with the real estate that, in the absence of any agreement or understanding with his vendor as to the goods, a purchaser of the real estate with knowledge of interest of others of record, or in possession, would reasonably consider the goods to have been purchased as part of the real estate."

K.S.A. § 84–9–313(1)(a). Because the Court determines the center pivot system to be so associated with the realty as to be deemed a part of it, and therefore a fixture, the Bank's filed mortgage constitutes a prior perfected security interest in the same and Ag Services' objection is overruled.

### FINDINGS OF FACT

From the parties' exhibits and the testimony presented to the Court by co-debtor, Randolf Ardery, and Gary Bartlett, president of the Bank, the Court makes the following findings of fact. In 1988, Mr. Ardery bought an eighty-acre tract in Edwards County which is legally described as follows:

> The North Half of the Southwest Quarter (N/2 of SW/4) of Section Thirty-three (33), Range Twenty-six (26) South, Range Nineteen (19) West of the 6th P.M., Edwards County, Kansas.

Ardery purchased the property from Kinsley Bank. In order to secure a purchase money loan to acquire the land, the Arderys granted a mortgage to Farmers State

---

1. *In re Sand & Sage Farm & Ranch, Inc.*, Case No. 00–12209, and *In re Ardery*, Case No. 00–12210, were administratively consolidated on November 21, 2000.

2. Ag Services also objected to the sale price. The Court granted the sale motion on May 22, 2001, but required that $10,000 of the $100,000 proceeds be held in escrow pending the outcome of this matter. The parties stipulate that the grain bins are no longer in issue.

Bank which covered both the real estate as well as improvements and fixtures. By its terms, the mortgage conveyed a lien to Farmer's State Bank in the above-described real property,

"together with all the right, title and interest of the Mortgagor in said property now owned or hereafter acquired *and all buildings, improvements, and fixtures of any type now or hereafter placed on said property* and all easements, rights, appurtenances, rents, royalties, oil and gas rights and profits, water, water rights, and water stock, and all fixtures on or hereafter attached to the foregoing described property, all of which including replacements and additions thereto, shall be deemed to be and remain part of the property covered by this Mortgage." (Emphasis added).

Pursuant to K.S.A. § 58–2221, Farmers State Bank recorded the mortgage in the office of the Register of Deeds of Edwards County on June 2, 1988.[3] Offerle National Bank is the successor to Farmers State Bank and the current holder of the mortgage.

Eight years later, on January 4, 1996, the Arderys and Sand & Sage executed a security agreement granting Ag Services a security interest in their equipment as well as other farm-related assets.[4] Ag Services filed a financing statement with the Kansas Secretary of State on January 17, 1996.[5] Neither the security agreement nor the financing statement refers to fixtures.

The irrigation system in question is an eight-tower Zinmatic center pivot system which was attached to the land when Ardery purchased it in 1988. The irrigation system is comprised of an underground well and pump which is connected to a pipe which runs from the pump to the pivot where the water line is attached to a further system of pipes and sprinklers which are suspended from the towers, extending out over the crops in a circular fashion transmitting water for irrigation. Integral parts of the system are the engine and gearhead which are bolted aboveground to a concrete slab directly above the pump and well and are attached to the irrigation pipe. The irrigation system is neither easily removed from its present location nor easily transportable to another. Unlike some pivot systems, the towers of this system are not towable, meaning that they must be partially disassembled and transported one tower at a time because their tires are not positioned in a manner which would allow them to be towed on the road. Removal of the system would also require disassembly of the engine and removal of the gearhead.

Extraction of the down-hole pump which sits 120–130 feet below the ground would be expensive and would require the services of an oil service company or some other person owning pulling equipment. Mr. Ardery estimated that it would take two experienced men a full day to disassemble and move the entire irrigation system including the pipes, engine, pump and gearhead at a cost of approximately $2,500–3,000. The irrigation pipes are valued at $5,000, the engine at $1,000–1,200, the pump at $2,500, and the gearhead at $700–800, equaling a total maximum value of approximately $10,000. The irrigation system is in fair condition but is starting to show rust, and the only major upkeep to the system has been the purchase of a new 1997 Ford gas engine.[6] Mr. Ardery was

---

3. Offerle National Bank Exhibit A.

4. Ag Services of America Exhibit 4.

5. Ag Services of America Exhibit 5.

6. Offerle's Exhibit B.

unable to testify about sales of irrigation systems in pieces rather than as a whole, although theoretically the Zinmatic irrigation components could be sold separately.

Ardery testified that he intended to purchase the irrigation system when he purchased the land from the Kinsley Bank. Both he and Bartlett, the Bank's president, testified that they intended the sprinkler system to be a part of what was encumbered by the Bank's mortgage. Ardery also intended to sell the irrigation system to Bohn. This farmland has always been irrigated, and would likely be worth less than one-half of its current value if not irrigated.

Mr. Bartlett, an experienced banker who has worked in Edwards County for a number of years and is familiar with irrigated land and with the Zinmatic system in question, also estimated the value of the irrigation system to be approximately $10,000. Bartlett's estimate was based on a recent inspection of the system. Bartlett's photographs of the system, introduced in evidence, illustrated the system's great age and fair to poor condition.[7] While Bartlett agreed with Ardery's values with respect to the entire irrigation system, he contended that the moving costs might be as high as $4,500, thus resulting in a net value of $4,000–6,000.

It is the Bank's custom not to file a separate fixture filing with respect to collateral already affixed to real estate when the mortgage is executed. However, if the landowner improves the land and adds fixtures, the Bank then obtains a new security agreement and makes a fixture filing describing the newly-annexed property. Here, the irrigation system was annexed to the land and included in the Arderys' mortgage to the Bank. Presumably, the Bank made no further filings because the debtors did not improve or replace the system.

Bartlett agreed with Ardery that, without irrigation, the value of the eighty acres would be substantially lower.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(a)(2)(K).

## DISCUSSION

This case presents two issues to the Court. To be determined first is the nature of the irrigation system itself: is it a "fixture" as that term is defined by case law, the Uniform Commercial Code, and the Bank's mortgage, or is it simply "equipment?" Once this issue is resolved, the Court turns its attention to an analysis of each creditor's security interest to determine the nature, extent and priority of each creditor's lien in the property.

As noted above, the Kansas Court of Appeals has set out a three-step judicial test for determining whether personalty attached to real estate is legally a fixture in *Peoples State Bank v. Clayton*, 2 Kan. App.2d 438, 439, 580 P.2d 1375 (1978). Paraphrased, the steps are:

(i) how firmly the goods are attached or the ease of their removal (annexation);

(ii) the relationship of the parties involved (intent); and

(iii) how operation of the goods is related to the use of the land (adaptation).

Of the three factors, intent is the controlling factor and is deduced largely from the property-owner's acts and the surrounding circumstances. *Dodge City Water & Light Co. v. Alfalfa Irrigation & Land Co.*, 64 Kan. 247, 67 P. 462 (1902); *Schwend v.*

7. Offerle National Bank Exhibit B.

*Schwend,* 295 Mont. 384, 983 P.2d 988, 991 (1999) (quotation omitted).

■ The U.C.C. definition adds a fourth step: whether the average buyer of the land would reasonably expect the goods to be sold as a part of the real estate. K.S.A. § 84–9–313(1)(a). As the Comment to that section states, " '[f]ixture' is defined to include any goods which become so related to particular real estate that an interest in them arises under real estate law and therefore, goods integrally incorporated into the real estate are clearly fixtures." *See Id.* Off. Comm. 2. This suggests that the drafters of the U.C.C. intended that the common law real estate definition of "fixture" be incorporated into the Code definition and that the common law would remain useful in determining whether attached goods were indeed fixtures.

■ Turning to the present case, the Court concludes that the irrigation system is a fixture. It is firmly attached to the realty. The irrigation pipes are connected to the center pivot which is bolted to a cement slab in the center of the irrigation property and connected to the underground well and pump by wires and pipes. Further, the system is not easily removable. The towers must be disassembled in sections and transported separately, and disassembly and removal of the engine, gearhead and pump would be time-consuming and require the assistance of experienced people. It would also be expensive, particularly in view of the fact that the system's likely value is not more than $10,000, and the cost of removal could reach $6,000.

The relationships between the parties involved in each transaction also suggest the shared intent that the irrigation system be a fixture. In 1988, the Kinsley Bank sold the land to Ardery with the irrigation system included. Ardery, in turn, mortgaged the land, and the fixtures,

to the Bank. Banker Bartlett testified that he considered the conveyance of the mortgage to include the system as that was the Bank's custom and practice in Edwards County. Ardery and Bohn clearly intend the system to pass with the land in the sale now before the Court. Finally, Ag Service's security agreement contains a specific reference to an irrigation system other than that which is at issue here, but contains no reference whatever to this system. The debtor, his grantor, his lender, and his grantee, all share the intent that the system in question should pass with the land.

The irrigation system is suitably adapted to the land. There can be little dispute concerning the need for pivot irrigation in the semi-arid conditions of southwestern Kansas. All witnesses agreed, and it is well within this Court's common experience, that irrigated units of land are substantially more productive of crops than dryland acres. This alone demonstrates the relation between the operation of the goods and use of the land.

Finally, as suggested above, it is apparently not unreasonable for a western Kansas buyer to expect a center pivot system to be sold as part of a transaction involving arable ground. Both Ardery and Bartlett testified to as much and Ag Services offered no rebuttal testimony on that point.

Based on the forgoing, this Court concludes that the center pivot system is indeed a "fixture" as contemplated by both common law and the U.C.C. Other jurisdictions confronted with similar issues have held center pivot irrigation systems to be fixtures. In *Rayl v. Shull Enters., Inc.,* 108 Idaho 524, 700 P.2d 567 (1984), the court considered whether a pivot irrigation system, removed by a tenant at the termination of his lease, was a fixture. Removal of the irrigation system required

the removal of underground electrical cable and piping and unbolting the pivots from cement slabs buried in the ground. The Idaho court applied the annexation, adaption and intention tests and concluded that the irrigation system was a fixture. The court found that the system was annexed to the land; that the system was clearly adapted to the farming land because irrigation "is peculiarly necessary to a farming operation conducted in Idaho;" and that the system installed was "necessary and integral" for "the purpose of developing and farming the land in the manner [the farmer] had been accustomed to." 700 P.2d at 572.

In *Western Ag. Land Partners v. Washington Dept. of Revenue,* 43 Wash.App. 167, 716 P.2d 310 (1986), the Washington appellate court considered whether a center pivot irrigation system was a fixture for sales tax purposes. Applying the three-part test, the court held that the irrigation system was constructively, if not actually, annexed to the property through underground water lines and was indispensable because the normal use of the semi-arid farm land requires additional watering. The court also found that the system was specifically adapted to the size and topography of the farm land installed with the particular intention of "enriching the economic potential of the farm property." [8] 716 P.2d at 173–74.

■ Having determined that the irrigation system is a fixture as defined under the U.C.C. and common law, the Court must now determine the relative priority of the two creditors' interests in the system. Ag Services' security agreement grants it a security interest in all of the debtors' equipment and farm-related assets.[9] Ag Services has filed a financing statement that describes, inter alia, all of the debtors' "equipment," whether now owned or hereafter acquired. Unfortunately, to claim an interest in this fixture, Ag Services needed to do more. Its security agreement omits any mention of the debtors' fixtures. *See* K.S.A. § 84–9–203(1)(a). K.S.A. § 84–9–402(5) provides that a financing statement covering a fixture must not only describe the fixture but also contain a legal description of the real estate concerned as well as the name of the record owner. While Ag Services' financing statement contains a legal description, it appears to pertain only to Ag Services' crop security interest. Nothing in either Ag Services' security agreement or financing statement alludes in any way to the pivot system or to fixtures.

■ The Bank's mortgage, on the other hand, contains a description of the realty, the name of the owner, and an express reference to fixtures. In particular, the mortgage refers to "all fixtures now or hereafter attached to the foregoing described property, all of which including replacements and additions thereto, shall be deemed to be and remain part of the property covered by the Mortgage." Pursuant to K.S.A. § 84–9–402(6), such a mortgage may be effective as a fixture filing if the goods are described in the mortgage by type, the goods become fixtures, the mortgage complies with the U.C.C. § 9–402(1) requirements for financing statements, and if the mortgage is recorded. The Bank's mortgage complies with all of the U.C.C. § 9–402(1) require-

**8.** *But see Wyoming State Farm Loan Bd. v. Farm Credit System Capital Corp.,* 759 P.2d 1230 (Wyo.1988); *Schwend v. Schwend,* 295 Mont. 384, 983 P.2d 988 (1999). These cases dealt with different types of irrigation systems and in these cases, the courts held the irrigation systems at issue to be personal property instead of fixtures based on the parties' intent and the pipes' portable nature.

**9.** Ag Services of America Exhibit 4.

ments [10] and was filed with the Edwards County Register of Deeds on June 2, 1988. Moreover, nothing in Article Nine "... prevents the creation of an encumbrance upon fixtures pursuant to real estate law." K.S.A. § 84–9–313(3). This provision obviates the need for a separate security agreement.

Because the Bank has a valid and perfected encumbrance on the Arderys' fixtures by virtue of its mortgage, and Ag Services has neither a security agreement which refers to fixtures nor a financing statement formally sufficient as a fixture filing or filed as one, the Court finds that the Bank's interest in the center pivot irrigation system to be first and prior.

At the close of the evidentiary hearing in this case, the Court instructed the parties to attempt to agree on an amount of the sale proceeds which could be allocated to the center pivot system and reserved from distribution pending the Court's decision today. The parties agreed to the allocation of $10,000 of proceeds to the system and, on May 22, 2001, the Court ordered that amount reserved by the debtors from distribution.[11] Consonant with today's findings that the system is a fixture and that the bank holds a valid, perfected, and senior lien in it, the debtors shall forthwith distribute the reserved $10,000 and any interest accrued thereon to the Offerle National Bank.

For the reasons stated above, the Court finds that the Arderys' center pivot irrigation system is a "fixture" as that term is defined under the Kansas Uniform Commercial Code and that Offerle National Bank holds a valid and perfected security

interest in it. Ag Services of America's objection to the Arderys' Motion For Authority To Sell Property Free And Clear Of Liens is therefore OVERRULED.

The Court directs that the $10,000.00 held in escrow representing proceeds from the real estate sale be turned over to Offerle National Bank forthwith.

This Court's Judgment on Decision will issue this day.

### JUDGMENT ON DECISION

On May 22, 2001, this matter came before the Court for evidentiary hearing on Debtors' Motion for Authority to Sell Property Free and Clear Of Liens. Debtors, Sand & Sage Farm & Ranch, Inc. and the Arderys, filed their Chapter 12 petition on June 13, 2000, and are the owners of certain real and personal property located in Edwards County, Kansas.[1] Offerle National Bank claims a properly perfected security interest in the real and personal property. Pursuant to 11 U.S.C. § 363(c)(1) and (f), and Fed. R. Bankr.P. 6004, the Arderys seek to sell the real and personal property to Bohn Enterprises, L.P. for $100,000.00. Ag Services of America objects to the proposed sale asserting a valid and perfected security interest in the irrigation system, pumps and grain bins.

At the hearing, the Court heard testimony and oral arguments from both parties regarding whether the irrigation system was "equipment" or a "fixture" as those terms are defined in the Uniform Commercial Code. For reasons stated in the Memorandum Opinion, the Court deter-

---

**10.** Because a fixture filing need only be made locally per K.S.A. § 84–9–402(5), the debtor's social security number is not required, *see* K.S.A. § 84–9–401(1)(c) and 9–402(1).

**11.** *See* pleading 134.

**1.** *In re Sand & Sage Farm & Ranch, Inc.,* Case No. 00–12209, and *In re Ardery,* Case No. 00–12210, were administratively consolidated on November 21, 2000. Hereinafter, they will be jointly referred to as "Sand & Sage."

mines that the irrigation system is a "fixture" in which the Offerle National Bank has a valid, perfected, and first security interest. Therefore, the objection of Ag Services of America, Inc. is OVERRULED and the $10,000 of sale proceeds reserved by the debtors pending today's decision shall be distributed forthwith, along with any interest which has accrued thereon, to the Offerle National Bank.

IT IS SO ORDERED.