**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**AUGUST 17, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BURBANK IRRIGATION DISTRICT #4; CITY OF PASCO; FRANKLIN COUNTY WATER CONSERVANCY BOARD; and COLUMBIA-SNAKE RIVER IRRIGATORS ASSOCIATION, | ) ) ) ) ) ) | No. 38897-2-III |
| Respondent, | ) ) | PUBLISHED OPINION |
| v. | ) ) | |
| WASHINGTON DEPARTMENT OF ECOLOGY, WASHINGTON POLLUTION CONTROL HEARINGS BOARD, | ) ) ) ) ) | |
| Appellant. | ) ) | |

STAAB, J. — Burbank Irrigation District #4 applied to the Franklin County Water Conservancy Board (Conservancy Board) to amend one of its water rights certificates. Burbank sought the amendment to facilitate the sale of some of its water rights to the city of Pasco. The Conservancy Board granted the application conditioned on approval by the Department of Ecology. Ecology denied the application, and Burbank, joined by Pasco, the Conservancy Board, and Columbia-Snake River Irrigators Association (collectively Burbank), appealed Ecology's decision to the Pollution Control Hearings Board (PCHB). The PCHB granted Ecology's motion on summary judgment, concluding that the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

amendment and transfer would result in enlarging the water rights conveyed by the certificate. Burbank then appealed the decision to the superior court, which reversed PCHB's order on summary judgment and granted summary judgment for Burbank, overturning the decisions of Ecology and the PCHB and reinstating the Conservancy Board's decision.

Ecology appeals, arguing the superior court erred in: (1) reversing the PCHB's denial of the application to transfer because the transfer would have resulted in an unlawful enlargement of the water right, (2) addressing issues not decided by the PCHB, (3) granting summary judgment to Burbank on the issue of the validity of Irrigation District's right, and (4) granting summary judgment to Burbank on the issue of whether the transfer was in the public interest.

We hold that there are genuine issues of material fact concerning the scope and characteristics of rights conveyed by the certificate. Both the PCHB and the superior court erred in deciding this disputed factual issue on summary judgment. Additionally, in its appellate capacity, the superior court erred in deciding factual and legal issues beyond those determined by the PCHB and entering judgment in favor of Burbank. We affirm the superior court's order reversing the PCHB's order on summary judgment, but reverse the remainder of the superior court's orders on summary judgment in favor of Burbank. We remand to the PCHB for additional proceedings.

2

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

BACKGROUND

Because this issue was decided on summary judgment, the following facts are set forth in the light most favorable to the nonmoving party at the PCHB level, Burbank.

1.      WATER LAW BACKGROUND

A general summary of Washington water law is helpful in understanding the relevance of specific facts in this case.  A more comprehensive background is provided by the Supreme Court in *Cornelius v. Dept. of Ecology*, 182 Wn.2d 574, 344 P.3d 199 (2015).

Washington water rights are established under a prior appropriation system of "'first in time . . . first in right'" that was formally recognized by our legislature in 1917.  *Id*. at 586 (quoting LAWS OF 1917, ch. 117, § 1).  "Prior appropriation focuses on the beneficial use of water and generally provides that a person's right to the beneficial use of water is superior to others if he or she first appropriated the water for beneficial use."  *Id*.

The prior appropriation system is balanced by a regulatory permit system that prioritizes competing beneficial uses of the state's waters.  *Id*.  Those wishing to obtain new water rights submit applications to Ecology.  If Ecology determines that water is available for beneficial use, it issues a permit.  RCW 90.03.290(1), (3).

"Permits represent inchoate water rights, which are not choate (i.e., vested) until perfected."  *Cornelius*, 182 Wn.2d at 586 (citing *Lummi Indian Nation v. State*, 170 Wn.2d 247, 253, 241 P.3d 1220 (2010), and RCW 90.03.330).  To perfect this right, the holder of the permit must act with reasonable diligence to develop the water system and

3

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

beneficially use the water. *Id.* Once perfected, the water rights holder is entitled to a water rights certificate. *Id.* (citing RCW 90.03.330).

2.      BURBANK'S WATER RIGHTS PORTFOLIO

Burbank Irrigation District serves municipal water to the city of Burbank and surrounding areas. Burbank's portfolio of groundwater water rights is held in four ground water certificates. The first certificate, certificate No. 2272A, received in 1955, granted Burbank the use of 100 gallons per minute (GPM) and 134 acre-feet per year (AFY), to serve a population that was expected to reach 600 by 1960.[1] The second certificate, Number 3206-A, was received in 1958 and granted Burbank the use of an additional 250 GPM and 90 AFY. The third certificate, G3-25422C, received in 1979, granted an additional 400 GPM and 392 AFY to serve an anticipated population of 1,000 by 1997. By 1979, Burbank owned a total of 750 GPM and 616 AFY.

In 1980, Burbank applied to Ecology for a fourth certificate. The application explained that Burbank was experiencing nitrate and fluoride problems with existing wells. To solve this problem, Burbank proposed drilling a new well and blending the water retrieved from the new well with water retrieved from the older wells. The

---

[1] Quantitative water rights are described as instantaneous or annual. *See* Department of Ecology Program Guidance, publication 20-11-065, at 4 (Mar. 9, 2006). The annual quantity of water is the amount of water used in a year and is often described as acre-feet per year (AFY). Instantaneous quantity is the quantity of water used at any one time and is often described as gallons per minute (GPM).

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

application sought to increase the instantaneous rights from certificate G3-25422C from 400 GPM to 750 GPM and add an additional 500 GPM for the new well. The combined 1,250 GPM would be used to serve 165 homes and an estimated population of 1,000 by the year 2000. The application did not seek to add to or increase Burbank's annual quantity of water.

In 1981, Ecology issued permit G3-26578 to Burbank for 1,250 GPM, 616-AFY "LESS all the water withdrawn under Ground Water Certificates Nos. 2272, 3206 and 03-25422C [sic]." Clerk's Papers (CP) at 13. The 1980 report of examination issued with the permit states that the total amount of water authorized to be withdrawn under existing certificates (Nos. 2272, 3206 and G3-25422C) was 750 GPM, 616 AFY and that the "annual quantity of 616 acre feet per year ([Burbank's] existing right) is sufficient for the anticipated expansion." *Id.* The report indicates that the additional instantaneous amount was intended to "alleviate the high nitrate concentration . . . [and] will be mixed to insure [sic] that the resultant comingled waters have nitrate and fluoride concentrations below the State Board of Health limits." *Id.* The water withdrawn under permit G3-26578P was allowed from any or all of Burbank's three wells, two shallower existing wells, and one new well to be drilled into the lower basalt aquifer. *Id.*

Ecology issued certificate G3-26578C on this permit in 1983. Similar to the permit, the certificate authorized Burbank to withdraw 1,250 GPM and 616 AFY less the amount of water withdrawn under Burbank's three other certificates.

5

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

3.     ECOLOGY'S GUIDANCE POLICY

In 2006, Ecology issued publication 20-11-0165, Use of Terms that Clarify Relationships between Water Rights (Guidance Policy), which defined specific terms and clarified relational water rights.  Within the Guidance Policy, Ecology acknowledged that its use of several terms had been vague and inconsistent over the years.  The Guidance Policy was intended to provide clear terminology and guidance to Ecology staff when interpreting and administering original and subsequent water rights.

Historically, relational water rights had been described as primary or supplemental.  But the Guidance Policy advised staff to discontinue using the term "supplemental" because the term was too vague.  Instead, staff should describe relational rights as additive, non-additive, primary, standby, and alternate.

The Guidance Policy provided definitions for these terms.  An "[a]dditive" water right was defined as a "water right for either annual or instantaneous quantities of water that are added to an existing water right."  CP at 295.  A "non-additive" right was described as a water right that did not "increase the water available in existing water rights."  CP at 296.  "Primary water right" was defined as a right that "must be used to the fullest extent possible before a standby/reserve water right can be exercised."  CP at 296.  While "standby/reserve" water rights could "only be used when the primary water right goes unfilled or cannot satisfy an authorized use during times of drought or other

6

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

low flow periods," an "alternate" right was equal to and could be used as an alternate to

another water right:

> A water right that can be used either instead of, or simultaneously with,
> another water right.  Alternate rights authorize a substitute point of diversion
> or withdrawal under a second water right to meet or augment an existing
> water right.  The water user is allowed to determine which right to use.  An
> alternate water right generally does not have an annual quantity that is
> additive to other water rights, and can have an instantaneous quantity that is
> either additive or non-additive depending on the needs of the project.
> Alternate water rights are typically associated with municipal water supply
> purpose of use.

CP at 296.

Whereas "standby" rights could be used only when the primary water right was

unavailable, "alternate" water rights were intended "to provide an additional point of

diversion or withdrawal to the original water rights for source flexibility."  CP at 298.

4.      HILLSIDE FARMS TRANSFER

This appeal arises because Burbank is seeking to transfer some of its water rights

to Pasco.  It intends to do this by applying for an amendment to its certificate, G3-26578.

A water rights certificate may be amended by application to Ecology.  The application

may seek to add new or replacement wells, provide a new point of diversion, or change

the manner or place of use of the water right.  RCW 90.44.100.  Prior to issuing the

amendment, Ecology must be satisfied that the additional well taps the same body of

public groundwater as the original well, the additional well will not enlarge the right

7

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

conveyed by the original permit or certificate, and other existing rights will not be

impaired. RCW 90.44.100(2).

In 2009 Ecology authorized a transfer between Burbank and Hillside Farms

similar to the transfer Burbank seeks with Pasco. In 2008, Burbank applied to amend

certificate G3-26578C by adding a new point of withdrawal and changing the place of

use so Burbank could transfer a portion of its water right under certificate G3-26578C to

Hillside Farms. The application requested to transfer not only instantaneous but also

annual rights conveyed by certificate G3-26578C.

The conservancy board reviewing Burbank's application described Burbank as

having one water right under certificate G3-26578C. In affirming the amendment and

transfer, Ecology corrected this characterization:

> Burbank Irrigation District No. 4 currently holds four (4) water rights:
> Ground Water Certificate Nos. 2272; 3206; G3-25422C and G3-26578C,
> each with separate priority dates. While G3-26578C incorporated the
> quantities and wells authorized for use under the preceding water rights, it
> did not supersede these certificates. Certificate No. G3-26578C has the
> most junior priority date of the four rights, and would be the first of these
> four water rights to be subject to regulation if such actions were necessary.

CP at 314.

The report of examination for the water right transfer stated that certificate

G3-26578C provided for 1,250 GPM, 616 AFY less the water withdrawn under the other

certificates.

8

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

5.       BURBANK'S PROPOSED TRANSFER TO PASCO

In 2019, Burbank and Pasco entered into a purchase and sale agreement whereby Burbank agreed to transfer a portion of the water right conveyed by certificate G3-26578C to Pasco.  Conditioned on Ecology's approval, the agreement conveyed 320 AFY of annual volume to Pasco, and Pasco agreed to pay Irrigation District a total of $550,000.

To facilitate this sale, Burbank submitted an application to the Conservancy Board to amend certificate G3-26578C and transfer some of its water rights under this certificate to Pasco.  The Conservancy Board approved the application.  It made the following tentative determinations regarding the extent and validity of the water right under certificate G3-26578C and the effect of the transfer on the public interest:

> • The original intent of the water right was for municipal use for a growing population in the area.
>
> • The water right holder has exercised reasonable diligence in completing the expansion and use of the water right as demonstrated by the previous change/transfer in 2009 and as documented by meeting minutes discussing future expansion.
>
> • This change/transfer is in the public interest as it will provide additional water resources to an expanding population area in need of additional municipal water
>
> • The water right has been in continuous use has and has been in active compliance as a municipal supplier since the issuance of the certificate.

CP at 44.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

Ecology reversed the Conservancy Board and denied Burbank's application. Ecology determined that the proposed amendment and transfer would result in unlawful enlargement of the water right under certificate G3-26578C. It explained that the intent of the original application was for 500 instantaneous rights "to be used for blending water due to water quality problems" and certificate G3-26578C did not issue any additional annual rights. CP at 43-44. Because the certificate did not convey any additional annual rights, any transfer of annual rights under this certificate would necessarily amount to enlargement. Ecology also found that the transfer was not in the public interest because it "would be speculating as to the development of the inchoate portions of the . . . certificates." CP at 44.

6.      PROCEDURAL HISTORY

Burbank, joined by Pasco, the Conservancy Board, and Columbia-Snake River Irrigators Association, appealed Ecology's decision to the PCHB.

Ecology moved for summary judgment before the PCHB. It argued that it had properly denied the application because the transfer would result in an unlawful enlargement. Ecology also argued that the Conservancy Board erred in its tentative determination that the right was valid for transfer because Burbank had failed to prosecute its water rights with reasonable diligence. Finally, Ecology maintained that the transfer would be contrary to the public interest because it would result in enlargement and constituted speculation.

10

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

In response to Ecology's motion, among other arguments and evidence, Burbank presented evidence that the transfer would allow Pasco to keep its water rates low for its low-income and minority populations and Pasco needed additional water resources to meet the needs of its growing population.

The PCHB granted Ecology's motion for summary judgment, finding that approval of the application would cause unlawful enlargement of the water right under certificate G3-26578C. The PCHB also determined that the enlargement issue was dispositive and declined to address the tentative determination and public interest issues.

Burbank petitioned the superior court for review and moved for summary judgment, asking the superior court to reverse the PCHB's decision on the enlargement issue. The superior court granted Burbank's motion for summary judgment on the enlargement issue and also decided the tentative determination and public interest issues not decided by the PCHB. The superior court reversed the decisions of both the PCHB and Ecology and restored the Conservancy Board's decision approving the transfer.

Ecology appeals to this court.

ANALYSIS

1.    STANDARD OF REVIEW

Althougt the case comes to us from superior court, we review the case as an appeal from the administrative decision of the PCHB. The PCHB's final order is governed by the Washington Administrative Procedure Act (APA), ch. 34.05 RCW. *Top Cat*

11

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

*Enterprises, LLC v. City of Arlington*, 11 Wn. App. 2d 754, 759, 455 P.3d 225 (2020).

The APA provides that a reviewing court:

> shall grant relief from an agency order in an adjudicative proceeding only
> if it determines that:
> . . .
> (b) The order is outside the statutory authority or jurisdiction of the
> agency conferred by any provision of law;
> . . .
> (d) The agency has erroneously interpreted or applied the law;
> . . .
> (h) The order is inconsistent with a rule of the agency unless the agency
> explains the inconsistency by stating facts and reasons to demonstrate a
> rational basis for inconsistency; or
> (i) The order is arbitrary or capricious.

RCW 34.05.570(3). The burden of demonstrating the invalidity of an agency action is on

the party asserting the invalidity. RCW 34.05.570(1)(a).

On review, "[t]he pertinent record is the record before the board." *City of Union

Gap v. Dept. of Ecology*, 148 Wn. App. 519, 525, 195 P.3d 580 (2008). This court

reviews legal determinations under the error of law standard. *Verizon Nw, Inc. v. Emp't

Sec. Dept.*, 164 Wn.2d 909, 194 P.3d 255 (2008). The error of law standard permits this

court to substitute its view of the law for that of the agency but also requires it to "accord

substantial weight to an agency's interpretation of a statute within its expertise and to an

agency's interpretation of rules that the agency promulgated." *Id*. at 915 (internal citation

omitted). However, the substantial weight accorded to an administrative agency's

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

interpretation of its field of law is not decisive.  It is still the "province and duty" of the judiciary "to say what the law is."  *Overton v. Econ. Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981).

"[W]here the original administrative decision was on summary judgment, the reviewing court must overlay the APA standard of review with the summary judgment standard."  *Verizon Nw, Inc.*, 164 Wn.2d at 916.  Under this combined standard, this court views the facts in the light most favorable to the nonmoving party and affirms the summary judgment order only where the nonmoving party is entitled to judgment as a matter of law.  *Id*.  This court evaluates the facts de novo, and the review of the law is evaluated based on the error of law standard explained above.  *Id*.

2.     WHETHER THE SCOPE AND CHARACTERISTICS OF RIGHTS CONVEYED BY
       CERTIFICATE G3-26578C CAN BE DECIDED ON SUMMARY JUDGMENT

A water certificate conveying ground water rights can be amended, allowing the rights to be transferred, so long as certain conditions are met.  When an amendment seeks to add an additional well, "the combined total withdrawal from the original and additional well or wells shall not enlarge the right conveyed by the original permit or certificate."  RCW 90.44.100(2)(c).  Here, Burbank is applying to drill a new well and transfer water rights under certificate G3-26578C.  In deciding whether a new well or point of withdrawal would enlarge a water right, there must be a determination of the scope and character of the right intended by the original certificate.  The scope and character of a

13

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

water right is a question of fact. *Schuh v. Dep't of Ecology*, 100 Wn.2d 180, 183-84, 667

P.2d 64 (1983).

Ecology and Burbank disagree on what evidence can be considered in determining

the intent of certificate G3-26578C. Burbank contends that the PCHB should be

constrained to the face of the certificate. Burbank argues that Ecology should be

prevented from arguing "original intent" of the certificate because evidence from 1983

may no longer be available. We disagree.

In *Schuh*, the Supreme Court considered a similar issue on whether a proposed

transfer of water rights would result in enlargement of the right conveyed in the original

certificate. While *Schuh* was not decided on summary judgment, the Supreme Court

found that substantial evidence supported the PCHB's findings that the water rights

conveyed by the permit and certificate were supplemental and inferior to the water rights

available under the separate Columbia Basin Project. *Id.* To support this finding, the

court considered correspondence from the time of the application, the language of

limitations found in the permit, and the farmer's actual use of the water after receiving

the rights. Under *Schuh*, the PCHB may consider admissible evidence beyond the face of

the certificate to determine the intent of certificate G3-26578C.

Turning to the substantive question, we agree with Ecology that there is no

genuine issue of material fact that certificate G3-26578C did not grant additive annual

rights. Before the preliminary permit was granted, Burbank had three ground water

14

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

certificates that conveyed a total of 616 AFY rights. After certificate G3-26578C was granted, Burbank still owned a total of 616 AFY rights. However, we disagree with Ecology's assertion that this fact is dispositive.

Ecology contends that if certificate G3-26578C did not convey any additive annual rights, then amending the certificate to allow annual rights to be withdrawn from a new point of diversion would necessarily enlarge the annual rights conveyed by the certificate. In other words, if certificate G3-26578C granted zero additive annual rights, then allowing withdrawal of any quantity over zero is an enlargement. Ecology's position assumes that additive rights are the only rights that can be conveyed by a water rights certificate. Ecology's position also assumes that alternate rights are not independent water rights. Ecology does not cite any authority for this position and its argument is contradicted by Ecology's history, its own Guidance Policy, and case law that implicitly recognizes supplemental and alternate rights as independent water rights.

Burbank contends that regardless of whether certificate G3-26578C granted additive rights, the certificate granted a new independent water right. Burbank argues that certificate G3-26578C incorporated Burbank's prior annual rights and allowed Burbank to use all of its annual quantity under one certificate. In support of its argument, Burbank points to the plain language of the certificate and Ecology's approval of a similar transfer to Hillside Farms in 2009.

15

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

On its face, certificate G3-26578C granted Burbank 616 AFY. The first page of the certificate G3-26578C reads: "PUBLIC WATER TO BE APPROPRIATED . . . QUANTITY, TYPE OF USE, PERIOD OF USE 1250 gallons per minute, 616 acre feet per year, continuously, for municipal water supply." CP at 307. This evidence supports Burbank's position that certificate G3-26578C granted 616 AFY rights, whether additive or non-additive.

When read in a light most favorable to Burbank, the provisions on the second page of the certificate also creates a genuine issue of material fact on the scope and character of the right conveyed. The first paragraph provides:

> 1250 gallons per minute, 616 acre feet per year for a continuous municipal supply LESS all that water *withdrawn* under [the prior three certificates]. The total withdrawal *authorized by this Certificate* and [the prior three certificates] is 1250 gallons per minute, 616 acre feet per year.

CP at 308 (emphasis added).

Notably, while this provision suggests that the annual rights withdrawn under certificate G3-26578C are limited by the water withdrawn (not the water conveyed) under prior certificates, the parties agree that nothing prevented Burbank from withdrawing all of its annual rights under certificate G3-26578C at the new well location.

In addition, as Burbank points out, the clear language of the provision suggests that the 616 AFY is now authorized by certificate G3-26578C as well as the other certificates. If no annual rights were conveyed by certificate G3-26578C, there would be

16

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

no need to include language that the water drawn under certificate G3-26578C was limited by water drawn under other certificates.

Ecology's decision in the Hillside Farms transfer also supports Burbank's claim that certificate G3-26578C created a new water right. In the Hillside Farms decision, the Conservancy Board described Burbank's water portfolio as owning a single water right under certificate G3-26578C. In affirming the transfer request, Ecology corrected this assertion and noted that Burbank did not have a single water right certificate, but four certificates, each with separate priority dates. "While G3-26578 incorporated the quantities and wells authorized for use under the preceding water rights, it did not supersede these certificates." CP at 314.

The PCHB determined that Ecology's decision in the Hillside Farms transfer was factually distinguishable and legally irrelevant. The PCHB noted that a key factual difference was that the transfer in Hillside Farms was to an area that eventually became part of Burbank's service area. But it is unapparent what bearing the locale of the proposed transferee has to do with determining the scope of the rights granted under certificate G3-26578C. If the certificate did not grant a new water right, then Hillside's location is irrelevant. The PCHB also pointed to the Hillside Farms decision to support its finding that certificate G3-26578C did not supersede Burbank's previous three certificates, but the PCHB failed to address Ecology's finding in Hillside that certificate G3-26578 "incorporated" Burbank's instantaneous and annual water rights. CP at 24.

17

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

Ecology acknowledges its decision in Hillside Farms, but now claims that it was wrongly decided, is not precedential, and does not bind Ecology from taking a contrary position. While Ecology's decision in Hillside Farms is not legally binding or precedential, it is persuasive factual evidence that certificate G3-26578C was intended to create a new water right by incorporating Burbank's water rights within one certificate.[2] Although Ecology now claims that its decision in Hillside Farms failed to recognize that certificate G3-26578C did not authorize any additive annual rights, when taken in a light most favorable to Burbank it appears that Ecology took a close look at the rights granted by certificate G3-26578C, modified the Conservancy Board's description of Burbank's rights, and clarified that the certificate incorporated prior rights without superseding them. This is consistent with granting an alternate right. After describing certificate G3-26578C as incorporating prior rights, Ecology approved the transfer of annual rights from certificate G3-26578C.

---

[2] Burbank contends that Ecology is collaterally estopped from taking a position contrary to its decision in Hillside Farms. We decline to address this issue because it is not sufficiently briefed. A party asserting collateral estoppel generally must demonstrate four elements. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). But when challenging an agency action on grounds of collateral estoppel, a proponent must address three additional factors. *Id.* at 308. While Burbank's briefing touches on the first four elements, it fails to address the last three elements. *See State v. Stubbs*, 144 Wn. App. 644, 652, 184 P.3d 660 (2008) ("Passing treatment of an issue or lack of reasoned argument is insufficient to allow for our meaningful review."), *rev'd on other grounds by* 170 Wn.2d 117, 240 P.3d 143 (2010).

18

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

The Washington Water Utilities Council's amicus brief asserts that certificate G3-26578C granted alternate rights. There is evidence in the record to support this assertion. Ecology's Guidance Policy provided an example of an alternate water right that is strikingly similar to the circumstances of this case.

> For example: a municipality was issued Water Right G2-33333 for Well 1. During the summer, the well does not produce enough instantaneous flow to meet the peak demands of the system. Water Right G2-44444 is issued for additive instantaneous quantity from Well 2, which is a deeper, better producing well. Well 2 can be used simultaneously or **alternately** with Well 1, but the sum of water from the two sources cannot exceed the total annual quantity originally issued under Well 1.

CP at 296. The Guidance Policy makes it clear that a right can be both non-additive and alternate.

The PCHB found that certificate G3-26578C conveyed an alternate right, but concluded that since it did not grant an additive annual right, the certificate did not convey a new annual right. Ecology insists that the lack of additive rights is dispositive but fails to acknowledge the possibility that the certificate granted an alternate right, which, according to Ecology's own Guidance Policy, is a recognized water right that allows a water user to decide whether to use the original right or the alternate right.

The additive quantity of water granted by a new permit is not the only issue to consider. Indeed, enlargement can occur even when a proposed transfer does not increase the quantity of water conveyed by a permit. For example, enlargement can

19

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

occur when a transfer would change the scope of a right from an inferior right to a primary right. In *Schuh*, a farmer was seeking to transfer water rights under a permit that conveyed 640 AFY. 100 Wn.2d 180. The permit indicated the quantity of water appropriated was limited to the amount that could be "beneficially applied less amount of water available from rights of Columbia Basin Project and not to exceed 1600 gallons per minute; 640 acre-feet per year, to be used for [irrigation]." *Id.* at 182.

The Supreme Court found the PCHB's finding, that the water rights were limited by water withdrawn from the Columbia Basin Project, was supported by substantial evidence. Since the rights conveyed by the permit were supplemental to the water rights available under the federal project, transferring these rights to an area that was not served by the federal project would turn the supplemental (i.e., standby) rights into primary rights. "[T]he net effect of such a transfer would be an expansion of the right." *Id.* at 184. Notably, the proposed transfer was not seeking to increase the quantity of water conveyed by the permit, but because it would change the scope and character of the rights, the right would be enlarged.

Contrary to Ecology's position in this case, in a prior case Ecology, the PCHB, and the Supreme Court agreed that non-additive, alternative water rights can be new rights, independent of the rights that they supplement. In *Cornelius*, Washington State University (WSU) had six prior water rights when it was granted a new permit for a seventh well, permit G3-28278P. The permit granted 2,500 GPM and 2,260 AFY, less

20

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

those amounts appropriated under water rights for wells 1, 3, and 4. The permit

supplemented the water rights WSU was already authorized to appropriate under its

primary water rights and provided that the total combined withdrawal for all four rights

was not to exceed 2,500 GPM and 2,260 AFY. *Cornelius*, 182 Wn.2d at 608. The report

of examination for G3-28278P indicated that the permit was

> "for supplemental water only" and that the "waters to be appropriated from
> Well No. 7 will serve to replace, as necessary, those waters originally
> authorized or claimed for appropriation from Wells No. 1, 3 and 4."

*Id.* at 608.

In 2004, Ecology granted WSU's application to consolidate all of its water rights

by amending each of WSU's prior permits, certificates, and claims. In adding up the

consolidated quantities, Ecology included the quantities granted by G3-28278P, but

excluding the quantities associated with well 3, which it found invalid. The appellants

challenged Ecology's decision, arguing that because the rights granted by G3-28278P

were supplemental to three other rights, including the now-invalid claim for well 3, the

quantity granted by G3-28278P needed to be reduced by the quantity associated with the

invalid well before WSU's rights could be consolidated. Otherwise, the appellants

argued, the consolidation would enlarge WSU's water rights.

The PCHB disagreed with appellant's argument. Following a hearing, the PCHB

found that G3-28278P "represented a new right for a non-additive, alternative source of

water to replace water from older sources as needed, and a change or transfer of that right

21

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

was not legally dependent on those prior rights for its authorized quantities." *See*

*Cornelius v. Dep't of Ecology*, No. 06-099 2008 WL 5510407, at *7 (Wash. Pollution

Control Hr'gs Bd. Apr. 17, 2008).  Because G3-28278P granted a new water right, the

non-additive quantities conveyed by the permit were not dependent on the validity of the

rights for well 3.  Notably, the court determined that consolidating WSU's other rights

with the non-additive quantities conveyed by G3-28278P was permissible and did not

enlarge the rights granted by the permit.  *Cornelius*, 182 Wn.2d. at 608-09.

According to *Cornelius*, if Burbank's certificate G3-26578C created an alternate

right, then this right is independent of Burbank's prior AFY rights that were incorporated

into certificate G3-26578C.  By definition, an alternate right is a right that can be used

instead of the original right.  Neither Ecology nor the dissent acknowledge this

characteristic of an alternate right.

In this case, there is a genuine issue of material fact as to the rights conveyed by

certificate G3-26578C.  Specifically, Burbank has produced sufficient evidence to create

a dispute as to the relationship between the rights granted by its four certificates, the

scope and character of these rights, the amount of water granted by each certificate, and

whether certificate G3-26578 granted a new non-additive right.  These disputed facts are

necessary to determine whether Burbank's proposed amendment would necessarily

enlarge Burbank's water rights.  The PCHB erroneously interpreted the law by deciding

this issue on summary judgment.

22

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

3.    WHETHER THE SUPERIOR COURT ERRED IN DECIDING ISSUES THE PCHB DID NOT
       REACH IN ITS SUMMARY JUDGMENT REVIEW

Ecology argues that, under the APA, this court should decline to address issues the

PCHB did not reach.  Burbank maintains that this court is permitted to reach the issues

under the de novo standard of review.  We agree with Ecology.  Under its limited APA

review, the superior court erred in deciding issues that were not reached by the PCHB.

When reviewing an agency's decision, this court sits in the same position as the

superior court.  *Pacific Coast Shredding, LLC v. Port of Vancouver, USA*, 14 Wn. App.

2d 484, 501, 471 P.3d 934 (2020).

Under the APA, this court "shall grant relief from an agency order in an

adjudicative proceeding only if it determines that . . .  [t]he agency has not decided all

issues requiring resolution by the agency."  RCW 34.05.570(3)(f).  This provision has

been interpreted "to require, as a threshold matter, that an agency decide an issue before a

reviewing court can reach the merits of a party's legal position on appeal."  *Suquamish*

*Tribe v. Central Puget Sound Growth Mgmt. Hr'gs Bd.*, 156 Wn. App. 743, 775, 235

P.3d 812 (2010) (footnote omitted).  "Where an issue is not decided but remains relevant

to the challenged action, the appropriate remedy is to remand for the agency to exercise

its judgment and make a decision."  *Id*. at 778.

This court does not substitute its judgment to decide factual issues on appeal, but

may substitute its judgment "'for that of the administrative body on legal issues.'"  *Id*. at

23

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology*

779 (quoting *Ames v. Dep't of Health, Med. Quality Assurance Comm'n*, 166 Wn.2d 255, 260-61, 208 P.3d 549 (2009)). "Yet, because we accord substantial weight to an agency's view of the law it administers, we remand for the agency to exercise its judgment within its primary jurisdiction and only then will we 'substitute' our judgment." *Id.*

The PCHB only addressed the enlargement issue in reviewing Ecology's motion for summary judgment. After determining that its decision on the issue was dispositive, it declined to reach the additional issues briefed by the parties. Because the PCHB did not reach the additional issues, the superior court, sitting in its appellate capacity, should not have decided these issues. In our appellate capacity we likewise decline to address an issue without a determination from the PCHB. Accordingly, we reverse the superior court's order for summary judgment deciding the remaining issues and remand for the PCHB to decide the additional issues.

Affirm reversal of PCHB's summary judgment decision but remand for PCHB to consider additional summary judgment issues.

_____
Staab, J.

I CONCUR:

_____
Fearing, C.J.

24

No. 38897-2-III

SIDDOWAY, J.P.T.* (dissenting) — Between 1955 and 1981, Burbank Irrigation

District #4 (Burbank) applied for and was granted four groundwater rights, ultimately

based on a projected need for 616 acre feet per year (AFY) of groundwater and 1,250

gallons per minute (GPM) to serve 165 homes and an estimated population of 1,000 by

the year 2000.  It acquired the rights to its 616 AFY under its three earliest-acquired

groundwater rights, which were certificated in 1955, 1958, and 1979.  As acknowledged

by the majority, Burbank's application for its fourth groundwater right, certificated in

1983 by G3-26578C, "did not seek to add to or increase [its] annual quantity of water."

Majority at 5.  Groundwater right G3-26578C authorized a new point of withdrawal (well

location) and additional instantaneous quantity, but without any additional annual

quantity of groundwater.  The groundwater withdrawn was to come from Burbank's

earlier-acquired rights.

Burbank has never used anything near its total annual quantity of groundwater.  It

acknowledges that its maximum annual use has been 250 AFY, meaning that a full 366

AFY of water allocated under its certificates remains inchoate.[1]  Having concluded it will

---

* Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter.  She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

[1] An inchoate water right is "'an incomplete appropriative right in good standing.'" *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 596, 957 P.2d 1241 (1998) (quoting 1 Wells A. Hutchins, *Water Rights Laws in the Nineteen Western States* 226 (1971)).  It matures into an appropriative right when it is perfected through the actual beneficial use.  *Id.* at 592-93.

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

never need all of its AFY, in 2019, Burbank negotiated a $550,000 sale of rights to the

city of Pasco. Implicitly projecting that future growth within its service area will require

use of only an additional 46 AFY, its purchase and sale agreement with Pasco conveyed

320 acre-feet of water under G3-26578C. It elected to submit its application first to the

Franklin County Water Conservancy Board (Conservancy Board) rather than directly to

the Department of Ecology (Ecology).

The Conservancy Board conditionally approved the transfer, but Ecology reversed

the Conservancy Board and denied Burbank's application on multiple grounds.[2]

Relevant to this appeal, it determined that since Burbank never had the right to the

additional annual quantity of water under G3-26578C that it proposed to sell and transfer

to Pasco, the change, if approved, would enlarge the total amount of water that could be

drawn under that certificate, contrary to RCW 90.44.100(2)(c).

Burbank, Pasco, the Conservancy Board, and the Columbia-Snake River Irrigators

Association (collectively, Respondents) appealed Ecology's denial to the Pollution

Control Hearings Board (PCHB). Ecology moved the PCHB for summary judgment on

---

[2] Ecology found that the Conservancy Board's tentative determination of the
validity and extent of the water right failed to determine the quantity of water under
G3-26578C that had been perfected through actual beneficial use, as required by law; it
found that the Conservancy Board incorrectly found that Burbank had exercised
reasonable diligence to maintain the validity of any portion of the water right that
remained inchoate; and it rejected the Conservancy Board's public interest analysis,
determining that Burbank's proposal "is not i[n] the public interest in that the proposed
change/transfer would be an enlargement and would be speculating as to the development
of the inchoate portions of [Burbank's] certificates." Clerk's Papers (CP) at 343.

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

three grounds, and the PCHB granted summary judgment on one: what it termed the

threshold dispositive issue of whether Ecology was correct in determining that the

proposed change/transfer would cause an unlawful enlargement of the water right under

G3-26578C. Respondents sought judicial review by the superior court. The superior

court denied a request by Ecology for certification and transfer of the appeal to this court.

It then granted a motion for summary judgment filed by Respondents that not only

reversed the PCHB decision but also rejected Ecology's other grounds for denying the

transfer—grounds that the PCHB had never reached.

The majority correctly determines that the superior court erred by resolving, in an

appellate capacity, issues that had not yet been addressed by the PCHB. It erroneously

reverses the PCHB's summary judgment in Ecology's favor, however, on the basis that

"there are genuine issues of material fact concerning the scope and characteristics of

rights conveyed by [G3-26578C]." Majority at 2. Because the majority fails to identify

any viable issues of material fact that require resolution by the PCHB, I dissent.

A.     *The controlling issue is the "right conveyed" by G3-26578C, which is an issue of fact based on original intent*

RCW 90.44.100(2) provides that Ecology shall issue an amendment to a permit or

certificate of groundwater right to change the manner or place of use of the water only

after publication of notice of the application and findings as prescribed in the case of an

3

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

original application.[3]  The amendment shall be issued by the department only on

conditions identified by RCW 90.44.100(2).  The critical condition in this case is the one

identified by subsection 2(c): "[W]here an additional well or wells is constructed, the

original well or wells may continue to be used, but the combined total withdrawal from

the original and additional well or wells shall not enlarge *the right conveyed by the*

*original permit or certificate*."  (Emphasis added.)  The "original certificate" at issue is

G3-26578C.  Burbank could have applied to change or transfer one of the certificates

under which it is allocated an annual quantity of water, but it did not.

The change of a water right can only be approved to the extent it remains valid and

eligible for change.  *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*,

146 Wn.2d 778, 794, 51 P.3d 744 (2002).  In evaluating an application for change or

transfer of a water right, Ecology is required to tentatively determine the validity and

extent of the water right sought to be changed.  *Id.*; *R.D. Merrill Co. v. Pollution Control*

*Hr'gs Bd.*, 137 Wn.2d 118, 127, 969 P.2d 458 (1999).  As discussed by the majority, in

2006 Ecology issued a program guidance document titled "Use of Terms That Clarify

---

[3] The statutory requirement for "findings as prescribed in the case of an original application" incorporates the criteria for water right permit applications under RCW 90.03.290, including the requirements not yet addressed by the PCHB that the proposed change not be contrary to the public interest or detrimental to the public welfare.  *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*, 146 Wn.2d 778, 795, 51 P.3d 744 (2002).

4

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

Relationships between Water Rights" (Program Guidance 20-11-065).[4] Majority at 19.

The "Background" discussion in the guidance explained that in the course of issuing

water rights over the years, water resources staff used "various terms" to describe the use

of water rights that share purposes of use, points of diversion or withdrawal, or places of

use, and have used the terms "inconsistently." Clerk's Papers (CP) at 295. The guidance

document provided definitions and directions for use of terms going forward. It also

explained that in making tentative determinations, because terms have been used

inconsistently in the past,

> this will require a case-by-case review of the water right record to
> determine the original intent of the project, and the basis of quantities
> specified on the water right. A permit writer should not assume that a term
> used yesterday means the same thing as it would today. In some cases, a
> relationship term may not have been used but was clearly intended given
> the intent of the project.

CP at 297.

As related by the majority, in deciding whether a new well or point of withdrawal

would enlarge a water right, there must be a determination of the scope and character of

the right intended by the original certificate. Majority at 14. The scope and character of

a water right is a question of fact. *Id.* (citing *Schuh v. Dep't of Ecology*, 100 Wn.2d 180,

184, 667 P.2d 64 (1983)).

---

[4] WASH. DEP'T OF ECOLOGY, USE OF TERMS THAT CLARIFY RELATIONSHIPS
BETWEEN WATER RIGHTS, PROGRAM GUIDANCE 20-11-065 (2006), https://apps.ecology
.wa.gov/publications/documents/2011065.pdf [https://perma.cc/D65R-V4AH].

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

Ecology's decision reversing the Conservancy Board and denying Burbank's change/transfer request relied extensively on the original intent of the application and permit leading to certificate G3-26578C as revealed by the application and the Report of Examination (ROE), which is incorporated in the permit.[5]  The ROE contained three single-spaced pages of narration, and states in relevant part:

> Burbank Irrigation District No. 4 serves municipal water to the City of Burbank and the surrounding area.  They presently withdraw water from two (2) shallow wells which are drilled through the overburden to the underlying basalts.
>
> Well No. I is authorized by Ground Water Certificate No. 2272 which allows the withdrawal of 100 gallons per minute, 134 acre feet per year for a municipal water supply. . . .
>
> Well No. 2 is authorized by Ground Water Certificate No. 3206 which allows the withdrawal of 250 gallons per minute, 90 acre feet per year for a community domestic water supply. . . .
>
> An additional amount of water is authorized to be withdrawn from these two (2) wells by Ground Water Certificate No. G3-25422C.  This certificate authorizes the district to withdraw 400 gallons per minute, 392 acre feet per year for a municipal water supply.
>
> The total amount of water authorized to be withdrawn under existing certificates (2272, 3206 and G3-25422C) is 750 gallons per minute, 616 acre feet per year.
>
> Since 1978 water samples taken from the two (2) public water supply wells have indicated that the nitrate concentration in the water supply exceeded the State Board of Health limits.  To alleviate the high nitrate concentration, the district is proposing to drill a new well which will penetrate the basalt aquifer.  The district has been informed by their consultants (Robinson,

---

[5] The permit states that "[t]he applicant is, pursuant to the Report of Examination which has been accepted by the applicant, hereby granted a permit to appropriate the following described public waters . . . ."  CP at 286.

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

> Noble and Carr) that they can expect to encounter water at 400-600 feet beneath the land surface. The water from this confined aquifer within the basalt formation is expected to have nitrate and fluoride concentrations of 2 parts per million or less.
>
> Burbank Irrigation District No. 4 intends to withdraw water from the new basalt well and the two (2) existing shallow wells at various rates of withdrawal. After the water from the two aquifers has entered the distribution system, it will be mixed to insure that the resultant comingled waters have nitrate and fluoride concentrations below the State Board of Health limits.

CP at 290.

Ecology determined in reviewing Burbank's 2019 transfer/change application that its earlier application for G3-26578C stated the intent was only to withdraw an additional 500 GPM from a different, basalt aquifer, to be used for blending water due to nitrate contamination. It determined that it had issued the groundwater permit "for only 500 gallons per minute and no additional acre-feet." CP at 341.

> B. *The majority rejects Respondents' arguments on appeal but identifies its own material issues of fact*

The majority rightly rejects Burbank's position that intent should be determined from the face of the certificate, without consideration of other evidence of original intent. Majority at 14-15. The majority also rightly agrees with Ecology that there is no genuine issue of material fact that certificate G3-26578C did not grant additive annual rights. *Id.* at 15. The majority agrees that the additional instantaneous amount being requested by Burbank's 1980 application was intended to be "mixed to insure [sic] that the resultant comingled waters have nitrate and fluoride concentrations below the State Board of

7

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

Health limits," and that the ROE indicated that Burbank's existing annual quantity was

sufficient. *Id.* at 5-6 (alteration in original).

While the majority does not agree with the Respondents that language in

certificate G3-26578C and Ecology's decision approving an earlier Hillside Farms

transfer establish *as a matter of law* that the certificate includes its own allocation of 616

AFY,[6] it views that evidence as creating material issues of fact.

> 1. Language on the front page of certificate G3-26578C does not create a material issue of fact

Turning to the material disputes of fact relied on by the majority, the first is the

language in the "QUANTITY, TYPE OF USE, PERIOD OF USE" field on the first page of

certificate G3-26578C:

QUANTITY, TYPE OF USE, PERIOD OF USE
1250 gallons per minute, 616 acre feet per year, continuously, for municipal water supply.

CP at 307. The Respondents relied on this language as establishing a 1983 allocation of

616 AFY as a matter of law.

One reasonable construction of the language in the field is that, because the

certificate authorized an additional well location and additional instantaneous quantity,

---

[6] Burbank argues on appeal that "[i]t is true that Burbank's 1980 application did not *initially* seek an additional quantity of water, focusing on the new well and the need to dilute nitrate concentration, but *what is important is not what Burbank initially applied for but the allocation of water that it got*. During the application process—for reasons that Burbank can no longer document . . . Ecology determined to treat Burbank's portfolio of four water rights as a single unit, *with the new permit authorizing the full annual quantities of the portfolio*." Answering Br. of Resp't at 2-3 (emphasis added).

8

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

the permit and certificate needed to identify the water eligible for withdrawal—and in this case, it was the 616 AFY under Burbank's three earlier-acquired certificates. Certificate G3-26578C did not state that it was nonadditive as to annual quantity, which would be current practice, but as Ecology points out, the term "non-additive" was not in fashion in the early 1980s. Appellants' Opening Br. at 40.

The majority relies on the language as creating a material issue of fact. But attaching this significance to the language is contrary to the Supreme Court's guidance in *Schuh*.

In *Schuh*, the appellant desired water to irrigate his Grant County farm, and "[r]ather than applying for a permit of his own (behind 213 other applicants), . . . purchased the rights to an existing permit." 100 Wn.2d at 181. That permit had originally been acquired in 1950 by Albin Pederson, and a certificated right was acquired in 1951. *Id.* At the time, the United States Bureau of Reclamation was completing the facilities necessary to deliver water pursuant to the Columbia Basin Project. *Id.* at 181-82. Mr. Pederson was eligible for service by the project, which was information known to him when he applied for his permit. The project began delivering irrigation water to the Pederson property in 1957. *Id.* at 182.

Mr. Pederson's permit of record contained the following limitation:

"Quantity of water appropriated shall be limited to the amount which can be beneficially applied less amount of water available from rights of

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

> Columbia Basin Project and not to exceed 1600 gallons per minute; 640
> acre-feet per year, to be used for [irrigation]."

*Id.* at 182.

Decades later, after Mr. Schuh purchased and was assigned the groundwater right, he sought approval for two changes: a different point of withdrawal and a different place of use. Ecology refused to approve the proposed change of use; Mr. Schuh appealed to the PCHB; and the PCHB affirmed. Because the farm that was then withdrawing and using groundwater allocated by the permit was also receiving water from the Columbia Basin Project at the rate of 592.55 AFY, the PCHB determined that only 47.45 acre-feet of groundwater were available under the existing permit. *Id.* at 183. Since Mr. Schuh sought to transfer the permit outside the federal project area, the effect of the transfer would be an expansion of the right.

The superior court and this court disagreed with the PCHB, and reversed. But the Supreme Court accepted review and remanded for reinstatement of the PCHB's decision. *Id.* at 187. It explained that this court misapprehended the nature of the issue presented to the PCHB. It explained that "[t]o determine whether the water right will be enlarged by this change, we must first determine the scope of that right *prior* to the proposed change," and the PCHB determined that in light of the water received from the Columbia Basin Project, "only 47.45 acre-feet of water remained available under the terms of the permit." *Id.* at 183. By contrast, it observed, the Court of Appeals

10

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

viewed this issue as a question of law which it was free to interpret independently of the agency determination. In so concluding, the court committed two errors. First, it incorrectly characterized this issue as a question of law. Second, it applied the improper standard to resolve the issue.

*Id.* "Here," it held, "the issue presents a mixed question of law and fact

concerning the interpretation of a permit."

The factual issue to be resolved is whether or not the permit originally contained the limitation linking the amount of water Mr. Pederson had a right to obtain from the State to that which he purchased from the federal project. The agency found that Mr. Pederson's permit contained that limitation.

We find substantial evidence supports that finding. For instance, Mr. Pederson was notified at the time he applied for the permit that his farm was within the federal project area; the 1956 permit contains the language of limitation (although the certificate did not); and Mr. Pederson actually irrigated his farm from the federal project and did not use the water authorized by the permit after 1957. Since substantial evidence exists to sustain the agency's findings that the limitation existed, it was error to ignore this finding.

*Id.* at 184.

"Turning to the legal question," the Supreme Court held,

the issue then becomes, Did the agency correctly evaluate the legal consequences of that limitation? The agency viewed the condition as limiting the amount of water which may be appropriated to that in excess of that available from the federal project. Since Mr. Schuh sought to transfer the permit to a piece of property outside the federal project area, the net effect of such a transfer would be an expansion of the right.

The Court of Appeals, on the other hand, looked to the amount of water specifically allocated under the permit. Because the 640 acre-feet of water allocation had not been returned to the State upon the receipt of federal water, the Court of Appeals believed that the permit granted rights to the

11

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

> full amount of water. It concluded, therefore, that transfer of the right would not result in its enlargement.

*Id.*

This case is distinguishable from *Schuh* in that the PCHB resolved this case on summary judgment. Accordingly, rather than review the agency record to determine whether substantial evidence supports the PCHB's resolution of the factual issue, we review the PCHB's ruling de novo, making the same inquiry as the PCHB. *Cornelius v. Dep't of Ecology*, 182 Wn.2d 574, 585, 344 P.3d 199 (2015) (citing *Owen v. Burlington N. & Santa Fe R.R.*, 153 Wn.2d 780, 787, 108 P.3d 1220 (2005)).

The principle of *Schuh* that has direct application here is that it is error to view an interpretation of the language of the certificate as controlling. The language in the "QUANTITY, TYPE OF USE, PERIOD OF USE" field could only present a *factual* dispute if there were extrinsic facts that could serve as an aid in ascertaining the parties' intent from that language. *Cf. Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 282, 313 P.3d 395 (2013) (plurality opinion) (contract case). The majority identifies no extrinsic facts that can serve as an aid in ascertaining the parties' intent. The language of the certificate cannot *itself* transform its meaning into a "question of fact." In light of *Schuh*, relying on the language of the certificate is unhelpful, and its language provides no reason for reversing summary judgment.

12

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

> 2. Language on the second page of certificate G3-26578C does not create a material issue of fact

The majority's second identification of evidence creating a material issue of fact is the following language on the second page of the certificate, appearing under the heading, "PROVISIONS":

> 1250 gallons per minute, 616 acre feet per year for a continuous municipal supply LESS all that water withdrawn under Ground Water Certificate Nos. 2272, 3206, and G3-23422C. The total withdrawal authorized by this Certificate and Ground Water Certificate Nos. 2272, 3206 and G3-25422C is 1250 gallons per minute, 616 acre feet per year.

CP at 308. The majority accepts the Respondents' argument that if no annual quantity of water was authorized by certificate G3-26578C, then there would be no need to reduce the amount of water withdrawn through the new well location by amounts withdrawn under Burbank's earlier-acquired certificates. But this is simply wrong; there *would* be a need to do that. If the only acre-feet of water available to be withdrawn under G3-26578C are the acre-feet allocated by certificates 2272, 3206, and G3-25422C, then Ecology needs to know how much of the 616 AFY allocated to those three certificates is being withdrawn from the new well authorized by G3-26578C and from Burbank's other wells. Only by knowing what is being drawn from all of the wells can Ecology monitor Burbank's compliance with its groundwater rights. *See, e.g.*, WASH. DEP'T OF ECOLOGY, *supra*; CP at 300 (a water right can be additive only as to Qi (gallons per minute), and "[t]racking additive water rights is . . . important for compliance with metering provisions

13

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

on each water right and annual metering data submittals for water rights sharing a source").

As Ecology argues, this second-page language actually serves as further evidence that certificate G3-26578C does not authorize an additional annual quantity of water. It makes clear that the total withdrawal is limited to the 616 AFY allocated to Burbank by its first three groundwater certificates: "The total withdrawal authorized *by this Certificate* <u>*and*</u> *Ground Water Certificate Nos. 2272, 3206, and G3-25422C* is 1250 gallons per minute, 616 acre feet per year." Appellants' Opening Br. at 18, 21 (some emphasis added).[7]

Most importantly—as with the language on the first page of the certificate—the language of the certificate cannot *itself* transform its meaning into a "question of fact." In light of *Schuh*, relying on the language of the certificate is unhelpful, and here again, its language provides no reason for reversing summary judgment.

_____

[7] The majority's opinion emphasizes the language differently, as, "'The total withdrawal authorized *by this Certificate* and Ground Water Certificate Nos. 2272, 3206, and G3-25422C is 1250 gallons per minute, 616 acre feet per year.'" Majority at 16 (substituting bracketed language for the prior three certificates) (some emphasis omitted) (quoting CP at 308). If the majority is suggesting that the language conveys that "this Certificate" authorized 616 AFY, that is a strained reading. Compare, "The total number of judges authorized *for this division of the Court of Appeals* and Divisions One and Two is 22."

14

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

        3.      Ecology's decision letter on Burbank's 2009 Hillside Farms transfer does not create a material issue of fact

The majority's next identification of evidence raising a material dispute of fact is Ecology's 2009 decision letter addressing Burbank's application for an earlier change/transfer request. As recounted by the majority, in 2008, Burbank applied to amend certificate G3-26578C by adding a new point of withdrawal and changing the place of use in order to serve Hillside Farms. Majority at 8. The conservancy board that initially reviewed that application described Burbank as having one water right under G3-26578C. *Id.* A member of Ecology's staff performed the required review of the certificate, which, it should be recalled, had been issued 26 years earlier. In a decision modifying the decision of the conservancy board and approving the change/transfer to the Hillside Farms location, the Ecology staff member corrected the conservancy board's mischaracterization of certificate G3-26578C, pointing out that Burbank held four water rights, and "[w]hile G3-26578C incorporated the quantities and wells authorized for use under the preceding water rights, it did not supersede these certificates." CP at 314.

Ecology now acknowledges it may have erred in its decision approving the Hillside Farms application by failing to expressly recognize that G3-26578C did not authorize any additive annual quantity and for other reasons. Appellants' Opening Br. at 49 (citing CP at 281). Yet the majority takes the position that the staff member's 2009 characterization of certificate G3-26578C as "incorporat[ing] the quantities and wells

15

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

authorized for use under the preceding water rights" is "persuasive factual evidence that certificate G3-26578C was intended to create a new water right." Majority at 17-18.

If the staff member's characterization had been provided at the time the certificate issued, it would be persuasive evidence. Coming 26 years after-the-fact, and having been disavowed by Ecology, the characterization is not relevant, let alone persuasive, evidence. *Cf. Int'l Marine Underwriters*, 179 Wn.2d at 282 (in a contract case, extrinsic evidence is admissible as an aid in ascertaining the parties' intent at the time of formation, not later). If it were relevant evidence, then the opposite conclusion reached by Ecology staff in reviewing the certificate in 2019 would be relevant and *more persuasive* evidence, since it (unlike the 2009 characterization) is explained.

The PCHB reasonably rejected the disavowed 2009 characterization as irrelevant. As established in *Schuh*, the relevant evidence is the contemporaneous evidence of intent.

    4.    An "alternate right" rationale and fact-dependent decision in *Cornelius* do not create a material issue of fact

Finally, the majority endorses a point made by amicus Washington Water Utilities Council (WWUC) that certificate G3-26578C created an alternate right, and cites one of the holdings of the Supreme Court in *Cornelius* to support a construction of G3-26578C as creating a right independent of Burbank's earlier-acquired rights.

Like WWUC, the majority characterizes G3-26578C as creating a right that is "strikingly similar" to an example Ecology provides in Program Guidance 20-11-065 of

16

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

an additive instantaneous quantity granted for a second well. Majority at 19 (citing CP at 296); *Cf.* Amicus Curiae Br. at 10-12. As Ecology points out, the hypothetical from its guidance was the basis for a failed argument by the Respondents before the PCHB (see decision at CP at 24-25) and was abandoned by Respondents on appeal. Ecology argues that amicus cannot resuscitate an argument abandoned by the only parties who advanced it, citing *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 749 n.12, 218 P.3d 196 (2009). Appellants' Answer to Amicus Curiae Br. at 8-9.

The majority also attaches importance to the PCHB's and Supreme Court's affirmance in *Cornelius* of Ecology's determination that a 1987 water right acquired by Washington State University (WSU), permit no. G3-28278P, was undiminished by the invalidation of one of three rights to which it had been "supplemental." That determination was one of dozens challenged by Scott Cornelius in connection with Ecology's 2006 approval of a consolidation of WSU's existing groundwater rights. *Cornelius, Palouse Water Conservation Network, & Sierra Club Palouse Grp. v. Dep't of Ecology & Wash. State Univ.*, 2008 WL 5510407 (PCHB Apr. 17, 2008) at *1-2.

The PCHB noted in its decision that all but three of the issues raised in the appeal had been resolved through cross motions for summary judgment. *Id.* at *3. Cornelius's contention that the consolidation would enlarge permit G3-28278P by including 500 GPM represented by the invalidated claim (claim no. 098524) as part of its instantaneous quantity, was one of the issues reserved for fact-finding. *Id.* at *15. Summary judgment

17

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

was denied on that issue because it turned on "specifically what, in fact, was intended by the 'supplemental' nature of the permit, and what is the legal effect of such characterization." *Id.*

Following fact-finding, the PCHB held that Ecology's approval of the change application for permit no. G3-28278P did not unlawfully enlarge the right represented by the permit because rather than being "somehow *calculated from,* or *legally dependent on,* WSU's other pre-existing water rights or claims," the 2,500 GPM Qi authorized by the permit was based instead on "WSU's water system capacity, limitations, and long-range operational plans." *Id.*

At the Supreme Court, Cornelius "contend[ed] that the permit's language and its status as 'supplemental' necessarily mean[t] that the permit's validity depends on the preexisting water rights' validity." *Cornelius*, 182 Wn.2d at 608-09. The court held that the PCHB's finding was supported by substantial evidence, however. *Id.* at 609.

Notably, WSU had not been proposing to sell and transfer any acre-feet of groundwater to another user, but only to withdraw the full instantaneous quantity from its own well.

The example from Program Guidance 20-11-065 cited by WWUC and the majority is not contrary to Ecology's position that an alternate right can be nonadditive as to annual quantity. The PCHB agreed. *See* CP at 25 ("[E]ven classified as an alternate right, G3-26578C still does not individually grant an additive annual quantity of

18

No. 38897-2-III
*Burbank Irrig. Dist. #4, et al. v. Dep't of Ecology* (dissent)

groundwater such that Burbank may use the Certificate to transfer an annual quantity outside of its service area."). When it comes to the issues presented by this transfer, the more germane point made by Program Guidance 20-11-065 is that an alternate right "generally does not have an annual quantity that is additive to other water rights." CP at 296.

As for *Cornelius*, the fact-dependent determination of intent in that case, as affecting WSU's own use of instantaneous quantity, is irrelevant to assessing the facts bearing on intent in this case, as affecting Burbank's ability to sell and transfer a portion of a nonadditive right.

For the foregoing reasons, the majority has not identified a genuine issue of material fact that requires remand for further decision-making by the PCHB. I would affirm its grant of summary judgment.

Siddoway, J.P.T.

19